## 9278

ROSS TIN MINE v. CHEROKEE TIN MINING CO.

(88 S. E. 8.)

ACTIONS.  MINING LEASES.  FORFEITURES.  EQUITY.

1. EQUITY—FORFEITURES.—Equity will not divest a vested estate under a mining lease by enforcing a forfeiture for the breach of a condition subsequent.
2. ACTIONS.—Where a complaint states no cause of action entitling the plaintiff to equitable relief, but contains allegations which may entitle him to legal relief, the action will be retained in Court for the purpose of granting such relief.

Before WILSON, J., Gaffney, October, 1915.   Reversed.

This was an action brought by the Ross Tin Mine, a corporation, as plaintiff, against the Cherokee Tin Mining Company, a corporation, and Owen Gaffney, defendants, to set aside and to declare to be null and void a certain lease between the said plaintiff and John Baker and D. D. Nicholas, the interest of the said lessees having been transferred to the said defendant, and to enjoin the said defendants from entering upon the leased premises or from interfering with the use of same by the plaintiff.

From decree in favor of plaintiff, and enjoining the defendant from entering upon the leased premises, the latter appeals.

*Messrs. Dobson & Vassy,* for appellant, submit: *Plaintiff is not entitled to equitable relief:* 1 Pom. Eq. Juris., pp. 756, 764 and 767; 57 Pa. St. 65; 5 Colo. App. 287; 38 Pac. 603; 9 Cyc. 610, 613; 27 Cyc. 706, 729; 15 U. S. 626; 130 U. S. 291; 24 Cyc. 1347-1348; 21 U. S. L. Ed. 121; 15 Wall. 146; 170 U. S. 1; 14 U. S. 157; 138 Pa. 230; 108 Pac. 813; 154 Fed. 970; 40 Cal. 3; 69 L. R. A. 833; 104 U. S. 388; 46 S. C. 511; 40 L. R. A. 265; Barringer & Adams,

FOOTNOTE.—As to the refusal of equity to aid in the enforcement of a forfeiture, see 80 Am. Dec. 87, 38 L. R. A. (N. S.) 231.

Law of Mines & Mining in U. S. 131; 129 Pa. St. 31; 19 L. R. A. 127.

*Messrs. Butler & Hall,* for respondent, cite: 24 Cyc. 1348, 1351; 26 Cyc. 728.

February 29, 1916.

The opinion of the Court was delivered by Mr. Chief Justice Gary.

This is an action to set aside and to declare to be null and void, a certain lease between the plaintiff and John Baker and D. D. Nicholas,—the interest of the said lessees having been transferred to the defendant,—and to enjoin the defendant from entering upon the leased premises.

The contract which was entered into, on the 27th of September, 1911, between the Ross Tin Mine, plaintiff herein, and the lessees who assigned their rights under the contract to the defendant, Cherokee Tin Mining Company, contains the following provisions:

"That, for the consideration hereinafter named, moving from the parties of the second part to the party of the first part, the party of the first part agrees to allow the parties of the second part to dig, mine, prospect, and mill and remove all ores and minerals on all that piece, parcel or tract of land, containing three hundred and thirty-seven (337) acres, more or less, lying, being and situate in the State and county aforesaid, and known as the Ross Tin Mine place. This contract to begin and be in operation three months from the date of the execution thereof, and to continue in force for a period of five years from the date aforesaid. * * *

"That in consideration of the above, the parties of the second part agree to pay to the party of the first part, ten per cent. of the gross returns of all minerals mined, dug, milled, or removed from the said premises, during the said time. * * *

"That it is mutually entered into, and agreed by and between the said parties to this contract, that the cessation of work on the said premises, for a period of thirty days continuously by the parties of the second part (unless unavoidably prevented) or the failure to pay the sum of $15 per day, payable each week, for each day's cessation, over thirty days, shall work a forfeiture of this contract. * * *

"It is understood and agreed, that the parties of the second part, shall have the right to the free use of all machinery now on the premises for two years—they shall repair the said machinery, if so used, and shall return the same to the party of the first part in good condition, ordinary wear and tear excepted. If they shall use the said machinery for two years, after the two years they shall pay to the party of the first part the sum of thirty and no-100 dollars per month, payable monthly, for the use of the said machinery."

The complaint alleges that since said assignment, the defendant ceased operating the said mine, about the 1st of January, 1915, when, in violation of the terms of the agreement, it removed the force of employees, and abandoned the work of mining said land; that it has failed to pay to the plaintiff the penalty of fifteen dollars per day, for such cessation of work, in consequence of which conduct, the plaintiff elected to declare the contract forfeited; that it gave notice to the agents of the defendant, of said forfeiture, and notified the said parties, not to come upon said premises, or to resume work under said forfeited contract; that in response to said notice, the plaintiff was notified that the defendant, with one or more hands, would be at work on the 24th of March, 1915, and that in the course of a few days, a much larger force of hands would be at work; that in defiance of the notice of the plaintiff, that said contract had been declared forfeited, and that the defendant should not enter on said premises, the defendant, nevertheless, entered on said premises, on the 24th or 26th of March, 1915, with other persons, employed by said defendant, pursuant

to their notice and intention, to disregard the plaintiff's notice.

The defendant, in its answer to the complaint, denied that it had failed to comply with its part of the contract, and set up the following facts as a defense:

"That during the management of said premises the past two years, the work for the development of the property has been almost continuous, and the shipments of tin ore made to England, until the outbreak of the war in Europe; that in October, 1914, about 5,000 pounds had been accumulated and it was found upon examination, that it was impossible to ship the ore to Europe, where theretofore it had been treated; it was, therefore, shipped to Detroit, and every possible effort made to secure a proper separation and treatment of the ores in this country, but it was ultimately found impossible to get the tin ore treated. After repeated efforts, defendant, about the 1st of March of this year, was able to secure shipments of the ores to England, where the prior ore had been treated, and in addition to the ore accumulated at Detroit, about 1,400 pounds accumulated at the mine were shipped. In consequence of the war in Europe, and the impossibility of obtaining treatment and separation of ores in this country, an unavoidable condition arose with reference to the full operation of the property. Work on the mine, however, continued during the month of January and has continued without thirty days' continuous interruption, up to the present time; that defendants plead the conditions above stated, and the weather conditions during the months of February and March, as a justification for any time, during which work was not continued on the mine property."

The special referee, to whom the issues were referred, found as a fact that the plaintiff has never demanded payment of the amount mentioned as a penalty, but has only demanded a surrender of the premises.

He also says that from the testimony he "can not see where the defendant has allowed thirty days continuously to pass, without doing some kind of work on the premises."

His conclusions are as follows: That the defendant has the option to surrender the premises or pay the stipulated sum, whenever there is a breach of the contract; and, that the complaint should be dismissed.

On hearing the exceptions to the report of the master, his Honor, the Circuit Judge, ordered that the master's conclusions be reversed, on the ground that the defendants had forfeited all claims and rights under the contract; and that they be perpetually- enjoined from entering upon said premises, or interfering in any way with the possession and enjoyment thereof, by the plaintiff; whereupon, the defendant appealed to this Court.

It will be observed that the forfeiture of the lease is dependent upon the following alternative conditions: 1. That there was a cessation of work on the said premises, for a period of thirty days continuously, by the parties of the second part. 2. That the lessees were not unavoidably prevented from carrying on the work. 3. That there was not a failure on the part of the lessees, to pay the sum of $15 per day, payable each week, for each day's cessation over thirty days.

The complaint shows upon its face, that the plaintiff is seeking the aid of the Court, in the exercise of its chancery powers, to have a forfeiture of the lease declared, and the defendant perpetually enjoined from entering upon the land, and operating the mine.

The contract provides for the amount of compensation to be paid the lessor for the use of the land, also for the use of the machinery, after a certain period of time therein mentioned; also that the machinery was to be repaired by the defendant, if it should use it, in the manner therein stated.

The contract and the complaint both show, that the $15.00 per day for cessation of work, was intended as a penalty.

It is a well settled principle of equity, that in proper cases it will grant relief from the forfeiture, also from a penalty, but it will not lend its aid to a *plaintiff,* seeking to have a forfeiture *declared* or a penalty *enforced.*

The rule is thus stated in 1 Pom. Eq. Jur., sec. 459:

"The second question which it was proposed to consider is, When will a Court of equity, by its decree, actively enforce or carry into effect a forfeiture?

The general answer to this question is easy and clear.

"It is a well settled and familiar doctrine, that a Court of equity will not interfere on behalf of the party entitled thereto, and enforce a forfeiture, but will leave him to his legal remedies, if any, even though the case might be one, in which no equitable relief would be given to the defaulting party against the forfeiture. The few apparent exceptions to this doctrine are not real exceptions, since they all depend upon other rules and principles. The reasons of the doctrine are to be found in the universal principles, that a Court of equity refuses to aid any party who, by the remedy which he seeks to obtain against his adversary, is not himself doing equity, or who does not come before the Court 'with clean hands'—the same principle upon which the Court acts, when it refuses to specifically enforce a contract which is unequal, unjust, or has any inequitable features and incidents."

In *Oil Creek* v. *Atlantic R. R.,* 57 Pa. St. 65, a lease had been granted containing a condition that the lessee should build a certain railroad within a prescribed time, and the plaintiffs sought to enforce a forfeiture of the lease, on account of the defendant's nonperformance of this condition.

It was, therefore, very plainly a case where the Court could not, in accordance with the settled rule, set aside the forfeiture at the suit of the lessor.

Mr. Justice Sharswood explained the equitable grounds of this universal doctrine as follows:

"Although Courts of equity will not, in general, relieve against a forfeiture, unless it be in the case of nonpayment of rent, where an exact and just compensation can be made, by decreeing to the landlord the arrears of his rent, with interest and costs, yet they never lend their assistance to the enforcement of one, but leave the party to his legal remedies. More especially in this case, where the contract has been substantially carried out, but its literal fulfillment has been prevented by uncontrollable circumstances.    It is unnecessary to cite authorities in support of these positions.    They underlie all the cases which abound upon the subject, and have been canonized in the standard elementary works. They commend themselves to every man's common sense of reason and justice, in view of the special objects, which Courts of equity have been constituted to effectuate."

The doctrine in regard to forfeiture and penalties, is thus stated in 1 Pom. Eq. Jur., sec. 433: "Whenever a penalty or a forfeiture is used, merely to secure the payment of a debt, or for the performance of some act, or the enjoyment of some right or benefit, equity considering the payment or performance or enjoyment, to be the real thing intended by the agreement, and the penalty or forfeiture to be merely an accessory, will relieve against such penalty or forfeiture, by awarding compensation instead thereof, proportionate to the damages actually resulting from the nonpayment, or nonperformance, or nonenjoyment, according to the stipulations of the agreement. * * *

Where the penalty is to secure the performance of some collateral act or undertaking, equity will interpose, if adequate compensation can be made to the creditor party.

The original practice in such cases, was, for the Court of equity, to retain the bill, direct an issue to ascertain the amount of damages, and to grant relief upon payment of the damages thus assessed by the jury.    By the more modern practice, the Court of equity would doubtless determine

the amount of damages itself, without the intervention of a jury." ˙

The Court, however, will not exercise its chancery jurisdiction to award damages, except as incidental to other relief sought by the complaint *and granted by the Court.* *Bird* v. *R. R., 29* S. C. Eq. (8 Rich. Eq.) 46.

Other authorities throwing light on the question involved are : *McGinnis* v. *Knickerbocker Ice Co., 69* L. R. A. 833, and notes, 88 N. W. 925, 112 Wis. 385; 2 Story's Eq., ch. 33, entitled "Penalties and Forfeitures," and 1 Pom. Eq. Jur., sec. 1 of chapter 11, commencing with paragraph 432.

These authorities clearly show that his Honor, the Circuit Judge, was in error, in declaring a forfeiture of the lease, and granting the order of injunction ; and that no damages can be awarded by the Court, in the exercise of its chancery jurisdiction, as it has reached the conclusion, that no relief can be granted, to which the award of damages would be incidental.

But it does not necessarily follow that the complaint should be dismissed, as it contains allegations which show that the plaintiff may be entitled to relief on the law side of the Court. *Lanham* v. *Harby, 50* S. C. 428, 27 S. E. 862.

It is the judgment of this Court that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court, for the purpose of granting the plaintiff the relief to which he may be entitled.