### 9992

### TRAKAS *ET AL.* v. MITCHELL *ET AL.*

(97 S. E. 245.)

LANDLORD AND TENANT—WRONGFUL DISPOSSESSION—REMEDY.—Civ. Code 1912, sec. 3509, authorizing the landlord to bring proceedings to summarily eject tenant for failure to pay rent when due, provides that a tenant wrongfully dispossessed shall have legal action for his damages, and the tenant cannot by injunction prevent cancellation of lease and compel acceptance of rent.

Before WILSON, J., Spartanburg, Fall term, 1915. Reversed.

Action by N. S. Trakas and others, partners trading as N. S. Trakas & Company, against M. V. Mitchell and others. From orders granting a temporary and a permanent injunction, the defendants appeal.

*Mr. John Gary Evans,* for appellant, submits: *A defendant in possession cannot be ousted by temporary injunction:* 84 S. C. 39; 27 S. E. 408. *As to errors in overruling the demurrer:* Civil Code, sections 3501, 3508, 3509; 12 Rich. 49; 58 S. C. 145; 90 S. C. 50; 24 Cyc. 1352, 1353, note 41. *A Court of equity cannot interfere and prevent the relief afforded by a statute of the State:* 2 Strob. Eq. 154; 80 S. C. —; 43 S. C. 220; 16 Cyc. 79 (note 78); Story Eq. Juris.

*Messrs. Johnson & Nash* and *Lyles & Daniel,* for respondent. *Messrs. Lyles & Daniel* cite: *As to what steps a*

*landlord must take before he can enforce a forfeiture for nonpayment of rent:* 18 A. V. E, Enc. L. (2d) 375, *et seq.;* 15 Wall. 471; 31 L. Ed. 458; 1 How. 217; 31 1st Ed. 105; 98 N. W. (Neb.) 439; 94 N. W. (Iowa) 1113; 88 Am. St. Rep. 809 (Pa.); 31 N. W. (Mich.) 100, and cases collated in 32 Cent. Dig., Title "Landlord and Tenant," sec. 333, *et seq.;* 3 Cal. 334. *Court of equity have uniformly relieved against forfeiture for nonpayment of rent when compensation can be made:* 69 L. R. A. 833, 834, 840; 43 Conn. 550; (Ind.) —.

June 25, 1918.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This is an action for injunction. The complaint alleges:

"(2) That M. V. Mitchell is the owner of a life estate in the property hereinafter described, and that Colonial Trust Company is a corporation, and, as plaintiffs are informed and believe, claim to be the duly constituted agent and trustee for said M. V. Mitchell, with power to collect rents coming due to her.

"(3) That on the 6th day of August, 1910, the said M. V. Mitchell, in consideration of $500 paid to her by plaintiffs, made and executed to plaintiffs a lease on all that building situated on East Main street in the city of Spartanburg, between the storeroom of J. D. Collins and the storeroom of W. S. Glenn, for a term of five years, commencing January 1, 1913, at and for a monthly rental of $130, payable at the end of each month. That a copy of said lease is hereto attached, marked 'Exhibit A,' and made a part of this complaint, and reference thereto is craved as often as may be necessary. That, among others, the following provision is contained in said lease: 'In case default is made in the payment of monthly installments of rent for a period of twenty (20) days, it is understood and agreed that this lease may be terminated at the option of the party of the first part.'

11—111

"(4) That the plaintiffs, on January 1, 1913, entered into possession of the said premises, under said lease, and have continued and now are in possession of the same.

"(5) That on the 1st day of April, 1914, the plaintiffs leased to A. J. Bishop a portion of said premises for the monthly rental of $155, payable in advance on the first day of each month, and since that date the said A. J. Bishop has been paying to plaintiffs the said monthly rental of $155, a copy of said lease being hereto attached and marked 'Exhibit B,' and made a part of this complaint.

"(6) That since the commencement of plaintiffs' lease, plaintiffs have been paying the rent reserved by the same to the said M. V. Mitchell, or to different persons acting as her agents, sometimes paying the rent in advance for as much as three months.

"(7) That plaintiffs sent check for the November, 1914, rent to the defendant, Colonial Trust Company, which check was turned down at the bank, and on December 22, 1914, plaintiffs received a letter, of which the following is a copy:

" 'Messrs. N. S. Trakas & Company, Spartanburg, S. C. Dear Sirs: Your check for rent under the lease to Mrs. M. V. Mitchell has been turned down at the bank many times, and we have so notified you, and you promised on several occasions to make the same good on specified dates. As you have not done so, therefore, your rent has not been paid by the 20th of the month, as required under the said lease, and we have to notify you that the said lease covering building on the south side of East Main street, between the storeroom of J. D. Collins and W. S. Glenn, is hereby canceled. The check which you gave for the November rent must be paid by January 4th, 1915. Yours very truly, Colonial Trust Company, Trustee and Agent for Mrs. M. V. Mitchell, by T. E. Screven, President.'

"(8) That after receiving said letter, the plaintiff, N. S. Trakas, for the plaintiffs, on December 23, 1914, carried to the office of the Colonial Trust Company, in the city of

Spartanburg, $130 in money, and tendered same to Colonial Trust Company in payment of the rent for which the check was given, and said tender was refused. That on January 2, 1915, the plaintiff, N. S. Trakas, also tendered in money the rent for December, 1914, which was refused..

"(9) That plaintiffs are informed and believe that the defendant, M. V. Mitchell, through the defendant, Colonial Trust Company, has notified A. J. Bishop to pay no further rent to the plaintiffs, and to pay rent to the defendant, Colonial Trust Company, for the defendant, M. V. Mitchell, and have sought to prevail upon plaintiffs' tenant, A. J. Bishop, to attorn to the defendant, M. V. Mitchell, and have collected certain rent moneys belonging to plaintiffs from said A. J. Bishop.

"(10) That the defendant, M. V. Mitchell, neither in person nor by agent, made on the date when the rent fell due, nor on the last day of grace, any demand for payment of rent of plaintiffs on the demised premises or elsewhere. That the defendant, M. V. Mitchell, has not in person nor by agent made any re-entry on the demised premises so as to work a forfeiture of plaintiffs' lease, but the first intimation that plaintiffs had that the defendant, M. V. Mitchell, would seek to forfeit the lease between herself and plaintiffs was the letter hereinbefore set out.

"(11) That the continued interference with the plaintiffs' tenant, A. J. Bishop, in his payment of the rent, and the repetition by defendants of the collection of rent from said A. J. Bishop, which belongs to plaintiffs, will necessitate numerous suits at law for the protection of plaintiffs' rights and the collection of plaintiffs' rents.

"(12) That the defendants are not entitled to declare a forfeiture of plaintiffs' lease, plaintiffs having tendered the rent due within three days after it came due, and being now ready, willing, and able to pay the same, and bringing same into Court to be applied to said rent, together with interest on the amount due up to date of tender.

"(13) That defendants have suffered no loss or damage which cannot be fully compensated by the payment of the amount of rent, together with interest.

"(14) That the plaintiffs are entitled to relief against the claimed forfeiture of their lease from the defendant, M. V. Mitchell, and against interference with plaintiffs' tenant, A. J. Bishop, by the defendants, and have no adequate remedy at law.

"Wherefore, the plaintiffs pray:

"First. That defendants be enjoined: (1) From taking any further steps towards forfeiting plaintiffs' lease from M. V. Mitchell; (2) from interfering with plaintiffs' tenant, A. J. Bishop, and collecting any rent from him.

"Second. That the defendants be required to accept the rent tendered.

"Third. That the Court pass a decree relieving plaintiffs from the claimed and threatened forfeiture of their lease.

"Fourth. And for the costs, and for such other and further relief as may be just."

Upon this complaint, verified, the plaintiffs secured a temporary injunction. The defendant demurred. The demurrer was overruled, and the injunction was made permanent.

There are two appeals; one from the temporary injunction, and one from the permanent injunction. There is practically no dispute about the essential facts. There is only one question that need be considered: Does the complaint state facts upon which an injunction should have been issued? The complaint states the provision of the contract for forfeiture and the facts that made it operative.

Section 3509, vol. I, Code of Laws S. C. 1912, provided that, when a tenant shall fail to pay rent when the same shall become due, the landlord is authorized to apply to a magistrate and have the defaulting tenant ejected. The statute provides that, in case the tenant shall be wrongfully dispos-

sessed, he shall have his action for damages. The appellant had the right to enforce the forfeiture, both by the contract and by the statute.

It was error to deprive the landlord of a clear legal right by injunction. This is not an effort to enforce a forfeiture when a Court of equity may refuse its aid. It is an action to set aside a forfeiture, which is very different.

If a Court of equity can relieve from all forfeitures, then there would be no effective forfeitures. Tenants who pay their rent with worthless checks do not appeal to the conscience of a Court.

Both orders appealed from are reversed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE WATTS concur.

MR. JUSTICE HYDRICK, *dissenting.* No doubt, as a general rule, where a forfeiture is imposed by statute, equity cannot relieve against it. But this is not a case where the jurisdicton of equity to relieve against a forfeiture can be denied on that ground, because the forfeiture claimed is provided for only by the contract between the parties.

The statute invoked (section 3509, vol. I, Civil Code 1912) reads:

"In all cases where tenants hold over after the expiration of their lease or contract for rent, whether the same be in writing or by parol, or shall fail to pay the rent when the same shall become due, the landlord is hereby authorized and empowered, either in person or by agent, to demand possession thereof from the tenant or person in possession thereof; and in case of refusal or assistance, it shall be lawful for the person so letting said premises, houses or tenements, his agent or attorney, to apply to a magistrate, whose duty it shall be to have a notice served upon the person or persons so refusing to be dispossessed to show cause, before him, if any he can, within three days from * * * said personal service, of such notice, why he should not be dispossessed; and if he fails to show sufficient cause, it shall be the

duty of the magistrate forthwith to issue his warrant, directed to the sheriff of the county or any constable thereof, requiring him without delay to dispossess said person or persons from the premises so let, and authorizing him to use such force as may be necessary. * * * *Provided,* That in case any tenant is wrongfully dispossessed, he, she or they may have an action for damages against said landlord."

It is too plain for argument that the statute does not impose a forfeiture for failure to pay rent, but merely provides an expeditious remedy by which the landlord may dispossess a tenant who holds over after the termination of his lease, or fails to pay the rent when due. The statute has no application to this case, because the landlord was not proceeding under it to dispossess the tenant. The provision of the statute that a tenant wrongfully dispossessed thereunder may have an action for damages against the landlord was not intended to abrogate the jurisdiction of equity to relieve against a forfeiture, or to prevent a wrongful dispossession. The purpose was merely to prevent the statutory proceeding from having the force and effect of a judgment as to the legality of the ejectment.

I do not agree to the general statement that it was error to deprive the landlord of a clear legal right by injunction. The right to declare and enforce a penalty or forfeiture provided for by contract is a clear and legal right, and to say that it is error to enjoin the exercise of such a right would be a sweeping denial of the well settled jurisdiction of equity to relieve against penalties or forfeitures, or to enjoin the inequitable enforcement of any clear legal right, no matter how harsh or inequitable it might be to enforce it. The jurisdiction of equity grew out of the recognition of such rights by law Courts and their inability to relieve against them.

The question is not whether the Court of equity can relieve from all forfeitures. Unquestionably, there are some that it cannot, and others that it will not, relieve

against. Each case must be determined upon its own merits; hence, the rule that the granting or refusal of relief is within the sound discretion of the Court, and the corollary rule that, unless it appears that the discretion was abused (*i. e.,* manifestly erroneously exercised), it will not be disturbed on appeal.

Let us, then, examine the merits of this case, and we shall see that, under the well settled principles of equity, applied to the facts and circumstances, which are undisputed, the discretion of the Court was properly and wisely exercised.

These are the undisputed facts: On August 6, 1910, plaintiffs leased a storehouse from Mrs. Mitchell for a term of five years, beginning January 1, 1913, and paid her $500 cash for the lease, and agreed to pay her $130 per month at the end of each month during the term. The lease contained the following provision for a forfeiture:

"In case default is made in the payment of monthly installments of rent for a period of twenty days, it is understood and agreed that this lease may be terminated at the option of the party of the first part."

Plaintiffs paid the monthly installments of rent promptly —sometimes for as much as three months in advance—until December, 1914, when the first and only default occurred, and for that single default, notwithstanding the amount due was tendered in cash on the next day after plaintiffs were notified that their lease had been canceled, the defendant sought to forfeit the remainder of the term under the provisions above quoted.

As to that default, it appears that the rent for November, 1914, was not paid at the end of that month, but, on December 8th, plaintiffs gave Mrs. Mitchell's agent a check for the amount due; that payment of the check was refused at bank for want of sufficient funds to plaintiffs' credit; that, when notified of the dishonor of their check, they apologized and promised to pay the amount due in case the next day, but failed to do so; that between December 8th and 20th defend-

ant's agent made repeated efforts to collect the amount due by calling plaintiffs over the telephone and by calling at their store, but at no time were the plaintiffs notified that, unless the money was paid by the 20th, the defendant would exercise the option to cancel the lease. On December 22d, defendant's agent notified plaintiffs, for the first time, of her intention to exercise her option to forfeit the lease, and that notice was that their lease was canceled. On the next day, plaintiffs tendered the amount due in cash, which was refused.

In the meantime, plaintiffs had sublet a part of the store to A. J. Bishop at $155 per month. On December 22d, defendant's agent notified Bishop that plaintiffs' lease had been canceled and that, if he would remain in the store, he must attorn to her, which he agreed to do.

Again, on January 2, 1915, plaintiffs tendered the amount due to that date, in cash, which being refused, and defendant having made Bishop agree to attorn to her, plaintiffs brought this action to obtain relief against the attempted forfeiture. They alleged that they were able and willing to pay the rent promptly, when due, and that there would be no repetition of their delinquency.

On the verified complaint, setting out the facts above stated, in substance, Judge Sease granted a rule against defendants to show cause why an injunction *pendente lite* should not be issued. On hearing the return, which was in effect a demurrer to the complaint, an interlocutory injunction was issued, and, as a condition thereof, plaintiffs were required to give bond, with sureties, in the sum of $3,000 as security to defendants; and to pay the rent due, with interest, to defendants, or, upon their refusal of it, to pay it into Court, and to pay subsequent installments as they became due. These orders were passed at chambers.

The case was then brought to a hearing on the merits in open Court before Judge Wilson, when the defendants again

relied solely upon their demurrer, which the Court over-ruled, and made the injunction permanent.

The contention of appellants that Judge Wilson erred in making the injunction permanent on overruling their demurrer, and in not ordering a hearing on the merits, is not only technical, but without merit. It was stated at bar, and not denied, that the Court and counsel on both sides understood at the hearing before Judge Wilson that defendants relied entirely upon their demurrer. The facts were undisputed, and there was no suggestion there or here that either side could vary them by the testimony of witnesses. Therefore, there was no error in giving judgment absolute on the pleadings.

"The jurisdiction of equity to relieve from forfeiture seems to have been invoked most frequently in favor of defaulting lessees. If a lease provides that on the failure of the lessee to pay the rent at a specified time the lease shall be void, or the lessor may re-enter and declare the lease at an end, equity will ordinarily intervene to relieve the lessee, and set aside the forfeiture. And this will be done whether the lessee has been dispossessed by the lessor or not. This doctrine is based on the principle that, in all cases where the penalty or forfeiture is designed to secure the payment of a certain sum of money, a Court of equity will grant relief on the payment of the money secured with interest, also that such covenants in leases are intended merely as security for the payment of money, and, therefore, the money being paid the purpose of the forfeiture is gone." 10 R. C. L. 334.

In the very recent case of *Ross Tin Mine v. Cherokee Tin Mining Co.*, 103 S. C. 243, 88 S. E. 8, where plaintiff sought the aid of the Court to enforce the forfeiture of a lease, Chief Justice Gary, quoted, with approval, the following from 1 Pom. Eq. Jur., sec. 433 :

"Whenever a penalty or a forfeiture is used merely to secure the payment of a debt, or for the performance of some act, or the enjoyment of some right or benefit, equity

considering the payment or performance or enjoyment to be the real thing intended by the agreement, and the penalty or forfeiture to be merely an accessory, will relieve against such penalty or forfeiture, by awarding compensation instead thereof, proportionate to the damages actually resulting from the nonpayment, or nonperformance, or nonenjoyment, according to the stipulations of the agreement."

Clearly, under the principles above stated, the facts and circumstances justified the orders appealed from, and there was no error or abuse of discretion in granting them.   If there had been repeated defaults, or, even in the case of the single default here shown, if defendant had warned plaintiffs that she would exercise her option to forfeit the lease if the rent in arrears were not paid by the 20th of December, and if plaintiffs had failed to pay it by that date, in the face of such warning, then relief might properly have been denied them, in the absence of good and sufficient excuse for such failure.

It may be said that such notice was not necessary, because plaintiffs knew that the forfeiture clause was in the lease, and that defendant had the right to enforce it, at her option, if the rent was not paid when due.   That is true, but the answer is that such clauses are found in possibly the great majority of leases, but rarely are they attempted to be enforced.   They are considered, especially in equity, as provisions *in terrorem,* intended merely to secure the prompt payment of rent.

Forfeitures are not favored by the Courts, and provisions therefor have ever been strictly construed, and in equity they are forced to yield to compensation, when fair dealing and good conscience require it.   Even at the common law, the rule is well settled that—

"Where a right of re-entry is claimed on the ground of forfeiture for the nonpayment of rent, there must be proof of a demand of the precise sum due, at a convenient time before sunset upon the day when the rent is due, upon the

land, at the most notorious place of it, though there be no
person on the land to pay." *Prout v. Roby*, 15 Wall. 471,
476 (21 L. Ed. 58).

The authorities unanimously sustain this proposition.
None have been found to the contrary.    Many of them are
cited by respondents' counsel.    Strict and liberal compli-
ance with those requirements are conditions precedent to the
right to enforce a forfeiture for nonpayment of rent.
Why?    One reason, at least, is that such a proceeding serves
to arrest the attention of the tenant, and notify him that,
unless prompt payment is made, his rights will be forfeited.
In this case, there was no compliance whatever, or even
attempt to comply, with these prerequisite conditions.    This
case well illustrates the reason above stated, for, as soon as
plaintiffs were informed that defendant would forfeit their
lease, the rent due was promptly tendered.    It can scarcely
be doubted that, if plaintiffs had been notified before the
20th of December, or even on that day, that if they failed to
pay the rent on that day defendant would enforce the for-
feiture provided for in the lease, they would have paid it.

To deny plaintiffs relief in this case would make a prece-
dent, not only at variance with the great weight of reason
and authority, but one which would in future inevitably give
rise to much litigation between landlords and tenants; for the
principle of the decison is to be applied, not only in this case,
but in all others that may arise, and it is easy to conceive
many cases in which its application would result in great
wrong and oppression.    Suppose, for instance, that an agri-
cultural tenant should fail to pay his rent when due, say, on
the 1st of October, under precisely similar circumstances,
would his landlord be permitted to forfeit his lease, eject
him from the premises, and confiscate all of his crops on the
land, notwithstanding the rent had been tendered the day
after the forfeiture was attempted to be enforced?    In this
case, the landlord has suffered no injury, except the slight
delay in the collection of the rent and the petty annoyance

complained of by her agent growing out of his efforts to collect it between the 8th and 20th of the month—if, indeed, that can be called an injury.   To allow a forfeiture of the remainder of a valuable term as well as the $500 paid for it seems to me to be a remedy too harsh and unconscionable to be sanctioned by a Court of conscience.

MR. JUSTICE GAGE.   I concur in this dissent.