### PERRY v. MABUS *ET AL.*

#### (126 S. E., 487)

1. Usury—Evidence Held Insufficient to Show Usury.—In action to foreclose mortgage, defendants' testimony, "We paid the first $500 that was borrowed from him. It was paid back to him before the other papers were fixed in January, and, of course, we paid him $540. He charged us interest from August to January," *held* insufficient alone to show usury.

2. USURY—DEFENSE OF USURY HELD NOT AVAILABLE IN ACTION TO FORECLOSE MORTGAGE SECURING DIFFERENT LOAN.—Under Civ. Code 1922, Sec. 3639, fixing a separate action or a counterclaim in an action brought to recover the principal sum as the remedies for usurious interest received, alleged usury in particular loan which had been paid could not be defense to action to foreclose mortgage securing separate and distinct loan.

3. MORTGAGES—EVIDENCE HELD INSUFFICIENT TO SHOW MENTAL INCAPACITY.—Evidence held insufficient to show mental incapacity to execute note and mortgage.

4. APPEAL AND ERROR—COMPLAINT OF HEARSAY EVIDENCE RECEIVED WITHOUT OBJECTION CANNOT BE FIRST MADE ON APPEAL.—Complaint of hearsay evidence, which has been received without objection, cannot be first made on appeal.

Before C. J. RAMAGE, SPECIAL JUDGE, Lexington, December, 1923.  Affirmed.

Action by L. T. Perry against Eustace R. Mabus and Sallie Mabus.  Judgment for plaintiff, and defendants appeal.

The evidence was, in part, as follows:

Dr. W. P. Timmerman testified, in part, as follows:

"Q. Did you know Mrs. Sallie Mabus?  A. Yes, sir.

"Q. How long have you known her?  A. About the time her son was killed 15 or 16 years ago.

"Q. Well, tell us what her mental condition is.  A. I never thought Mrs. Mabus was as strong as she could be.  I took the view that Mrs. Mabus was of that temperament that she could be easily persuaded.  I don't think you could call her crazy.

"Q. She is of unusual temperament, not exactly normal? A. I have seen very little of her lately.  I haven't seen her but once or twice in several years.  She is not of strong mind as some women.

"Q. Do you think that her age has made her weaker?  A. I don't know that it has.  Some people are temperamental that way.  When I saw her then, I didn't think she was crazy.  I haven't seen her much lately, but I thought she would be easily influenced; she is getting old.

20—S. C.—135.

"Q. She is very feeble now? A. I don't know how feeble she is. I have seen very little of her lately. * * * "

Dr. L. M. Mitchell testified, in part:

"Q. Well, how about Mrs. Mabus, the old lady, you have seen her, you were their physician? A. I treated her. She had it too; that is, she had typhoid fever, too.

"Q. Since that attack of typhoid fever did it leave any bad effects as to her? A. I never noticed her much before that time.

"Q. But after that, how was her mind? A. She was pretty old, but her mind seemed to me to be rather weak.

"Q. Is her mind in such condition that she could have been easily overruled by designing persons? A. I hardly know enough about her to judge her on that line.

"Q. Do you know whether she would do most anything that Eustace told her to do. A. Well, sir, I don't know whether she would or not.

"Q. You just know that she was rather weak-minded? A. Yes. * * * "

Dr. J. T. Sawyer testified, in part, as follows:

"Q. Now, Mrs. Mabus, you know her very well? A. Ever since she was a little girl.

"Q. Can she read and write? A. I don't think she can.

"Q. She is rather old now? A. Yes, sir; she is getting pretty old. I think maybe I am a couple of years older than she is.

"Q. Well, sir, what would you say as to her mental condition? Is her mental condition weak? A. I would say she is in what you would call her second childhood.

"Q. Well, you know any old person will be more or less that way? A. I think she is a little childish and has been that way for some time.

"Q. She has been that way for a good many years, growing a little worse occasionally and as time goes on? A. I don't know; she can do right smart around the house yet, but I think she has been worse since the death of her husband than she was before. That seemed to have a strain on her.

"Q. Do you know who has conducted the farm there? A. I think Eustace conducted it up until some time back, and then his wife conducted it. * * * "

. Mr. H. Muller Sawyer testified, in part:

"Q. You have known Mrs. Sallie for quite a while? You were raised right there by her? A. Yes, sir.

"Q. Do you know whether she can read or write? A. I don't think she can.

"Q. What has been her condition for the last few years as to the strength of her mind? A. Well, I can't answer that because I don't know, but, apparently, she gets around the house, and tends to some of the housework.

"Q. Does she attend to her chickens and some of the cooking? A. I don't know how much she does, but I see her around in the house.

"Q. As to business, does she attend to any business? Does she count money? A. No, sir; I don't think she can.

"Q. Did you ever see her try to count money? A. Not that I recall.

"Q. Do not know what sort of influence Eustace has over her? A. I think Eustace has great influence over her, because she always seemed to pet Eustace.

"Q. She was under his (Eustace's) influence to a great extent? A. Yes, I would think she would try to do what he wanted her to do.

"Q. Mr. Sawyer, what about the old lady—do you consider her competent to attend to her property and attend to business transactions? A. I don't think she can read or write. I think from her old checks they just have a little mark on them.

"Q. What about her competency? Would it be dangerous for her to attend to business? Could she be overreached? A. I think she could.

"Q. Is she pretty feeble? A. Here in the wintertime she was pretty feeble, but you know anybody at her age is pretty feeble."

### "Cross-Examination

"Q. Mr. Sawyer, as I understand you, while you do not know it personally, yet, from what you can gather, Mrs. Sallie Mabus was never educated? That doesn't make people crazy? A. No, sir.

"Q. Now, she has been a good woman, industrious woman, and smart? A. One of the smartest women I have ever known. * * *"

*Mr. E. L. Asbill,* for appellants, cite: *Interest regulated:* Civ. Code, 1922, Sec. 3638. *Penalty for charging usurious rate of interest:* Civ. Code, 1922, Sec. 3639. *What agreements deemed usurious:* 29 A. & E. Enc. of Law, 460. *Usurious contract construed strongly against lender:* 39 Cyc., 918. *Schemes to evade usury statutes prohibited:* Tyler on Usury, 354. *Contract in question usurious:* 114 S. C., 364; 110 S. C., 560; 96 S. E., 722; 76 S. C., 450; 57 S. E., 180; 51 S. C., 550; 29 S. E., 225. *Usury may be unintentionally charged:* 77 S. E., 141. *When party charged with notice of weak mental condition of other party:* 72 Mo., 73; 125 N. W., 161; 31 L. R. A. (N. S.), 1160. *Mortgagee having notice of mental incapacity of mortgagor cannot enforce mortgage:* 121 N. C., 31; 27 S. E., 994; 62 Miss., 440; 82 A., 877; 42 L. R. A. (N. S.), 343. *Mortgage executed by insane party not enforceable, though mortgagee without notice of insanity:* 251 Ill., 116; 95 N. E., 1079; 94 Ind., 535; 48 Am. Rep., 185; 8 Ohio Dec. Reprint, 154. *Equity will not enforce lunatic's contract except for his benefit:* 66 Am. Dec., 414. *Circumstances sufficient to charge one with notice of insanity:* 31 L. R. A. (N. S.), 1159. *Contracts with lunatics before and after adjudication; void or voidable:* 52 S. E., 666. *Contract with lunatic constructively fraudulent:* 52 S. E., 666. *Contract with habitual drunkard made during sober moment voidable:* 8 N. Y., 388; 59 Am. Dec., 99. *Contract with insane person prima facie void:* 29 S. E., 182; 8 Rich. Eq., 286. *Deed of insane person void:* 4 McC., 183; 17 Am. Dec., 722; 15 Well., 9; 21 L. Ed., 73; 71 A. S. R., 430, note; 19 L. R. A. (N. S.),

461.  *Forms of undue influence rendering contract voidable:* 177 S. C., 459; 4 L. R. A., 639.  *Evidence of non-expert on mental capacity is competent:* 37 L. R. A. (N. S.), 592.  *Insanity:* 107 S. C., 72.  *Borderland between weakmindedness and imebcility:* 110 S. C., 183; 106 S. C., 328; 105 S. C., 329; 103 S. C., 450; 88 S. E., 299; 24 S. C., 8.  *Capacity to contract as affected by mental condition:* 90 S. C., 207; 61 S. C., 501; 39 S. E., 742; 57 S. C., 413; 52 S. E., 666; 30 S. C., 473; 9 S. E., 515; 24 S. C., 1; 3 L. R. A. (N. S.), 174; 2 Pomeroy's Eq., 957.  *Proof of sanity:* 71 S. C., 331; 65 S. C., 558; 16 S. C., 334; 4 McC., 183.  *Deed of aged person not understanding instrument set aside:* 113 S. C., 392.

*Messrs. Timmerman & Graham* for respondent.

April 3, 1925.

The opinion of the Court was delivered by MR. JUSTICE FRASER as follows:

"This is an action to foreclose a mortgage.  The defenses set up are usury and insanity.  It was tried before Hon. C. J. Ramage, Special Judge, who found for the plaintiff.  The defendants appealed.

I. The defendants set up usury and insanity

1    The first assignment of error is that his Honor held that there was no evidence of usury.  His Honor was correct.  The appellant relies upon this statement to show usury:

"We paid the first $500 that was borrowed from him.  It was paid back to him before the other papers were fixed in January, and, of course, we paid him $540.  He charged us interest from August to January."

Appellant claims that the $40 was interest on $500 from August to January.  It is not clear that it was interest only.  The burden is on the defendants to make it clear that the $40 was for interest only.  But suppose it was interest only.  The statute (Civil Code 1922, page 3639) provides two remedies for usurious interest received.  One is a separate

action, and the other is a "counterclaim in any action brought to recover the principal sum." This is not an action to recover the $500 loan. That loan of $500 "was paid back to him before the other papers were fixed." The two loans were separate and distinct so far as the money lender and the borrower were concerned. There is no evidence of usury in this second loan. This assignment of error cannot be sustained.

II. The next assignment of error is that his Honor was in error in finding that the obligors were of 3, 4 sound mind. There was no evidence that Mrs. Sallie Mabus was of unsound mind. It is true she had no education, but the record shows that she was a thrifty woman, of excellent natural ability. His Honor's finding as to Eustace Mabus is abundantly sustained by the evidence. The hearsay evidence as to the opinion of Dr. Watson was received without objection, and it is too late to object to it now.

All of the exceptions are overruled and the judgment appealed from is affirmed.

MESSRS. JUSTICES WATTS and MARION concur.

MR. CHIEF JUSTICE GARY and MR. JUSTICE COTHRAN did not participate.