14316

WAITES v. BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES

(186 S. E., 276)

Before HOLMAN, J., County Court, Richland, June, 1935.

*Messrs. Benet, Shand & McGowan* and *J. J. Farnan,* for appellant,

*Mr. C. T. Graydon,* for respondent.

June 16, 1936.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

Appellant is an association composed of subordinate lodges in various towns and cities in the United States and Canada, with its Grand Lodge in Detroit, Mich., and among its other business is the insuring of the lives of its members, subject to the provisions of the constitution and by-laws of the association known as the death benefit department of such constitution and by-laws.

Respondent is the niece of, and the beneficiary in a certificate of insurance issued to one, G. W. Thomas, by appellant. Mr. Thomas had been a member of appellant for many years, and on April 1, 1928, the death benefit to which he was entitled was $500.00. The premiums on his insurance were payable in advance, quarterly, so that on April 1, 1928,

Mr. Thomas was due to pay during that month the quarterly premium. Under the constitution and by-laws, if the premium for that quarter was not paid during the first month of the quarter, the member failing to thus pay, and in the instant case, Mr. Thomas, lost his right to participate in the death benefit built up, which, as aforesaid was $500.00. However, a member had the right to pay the quarterly dues within the quarter and become reinstated; but such reinstatement merely placed such member in a position to again start to build up a death benefit fund. All quarterly premiums had been promptly paid within the first month of the quarter in which they became due, from the time Thomas joined appellant association quite a number of years prior to his death, and until his death on July 15, 1934, in his eighty-fifth year of age, except the premium becoming due for the second quarter in the year 1928. This premium, according to the records of appellant, was not paid until May 21, 1928. It is the contention of appellant that, Thomas having failed to pay the second quarterly premium in 1928 until in May, he lost all rights in and to the $500.00 death benefit, and his beneficiary was entitled to only such death benefit as had accrued since his reinstatement, amounting to $150.00. It is unnecessary to go into detail as to the manner in which the death benefit increased as fixing the amount to which the beneficiary is entitled; it being conceded by the litigants that respondent should be paid either $500.00 or $150.00.

Upon a trial of the case in the Richland County Court, a jury awarded the beneficiary, the respondent herein, $500-.00, and appeal is taken to this Court.

Appellant, in printed argument, states the "Points Involved" as follows:

"1. Refusal to direct a verdict for the defendant on the evidence and under the terms of the by-laws governing the contract between the parties.

"2. Error in the admission of testimony to establish agency.

"3. Error in the Judge's charge in submitting to the jury a question which was precluded by the terms of the by-laws, and was not applicable to the facts as proven.

"4. Inconsistent charge of the Court."

For some time prior to April 1, 1928, Mr. Thomas had been a watchman or flagman at a grade crossing in the City of Columbia, S. C., which was a 7-day week job. Appellant's local lodge had a lodge room and office near Efird's Store, Main Street, Columbia, S. C., and held meetings on the third Sunday in each month, and it was on such third Sunday in the first month of the quarter that dues were usually paid. C. B. Smith, in 1928, was the secretary and treasurer of the local lodge. He resided at Ridge Spring, 42 miles from Columbia, but came to the lodge meetings. Mr. Thomas, being unable to attend the lodge meetings, either mailed his dues through the medium of a post office money order or sent same to the meetings by some friend, and on occasions by his friend, a Mr. Sox, a section foreman for the same railroad company employing Thomas, and who worked and resided near him. Mr. Thomas, having no immediate family, had resided with his niece, the respondent herein, for several years, and continued to reside with her until his death, and respondent commenced to transact his little business affairs for him.

Over the objection of appellant, respondent was permitted to testify that on April 14, 1928, she went to the local office of appellant for the purpose of paying the quarterly premium of Mr. Thomas; that she was informed by a person unknown to her, in the lodge office, that Mr. Smith (the secretary and treasurer), was not in town; that this person told her to send the money by Mr. Sox; that in accordance with these instructions, she carried the dues or premium and the last receipt to the house of Mr. Sox where she delivered same to him on the night of April 14, 1928. It was required in making a quarterly payment to exhibit receipt showing payment of the premium for the preceding quarter.

It appears that Mr. Sox did not pay the premium to the secretary and treasurer at the meeting held on April 15, but paid it at the next meeting in May, 1928. On May 1, 1928, Mr. Thomas had an attack of some kind, and did not work any more; in fact, was relieved of his job and was an invalid until his death. The premiums were sent to the secretary and treasurer through Mr. Sox as long as Mr. Smith continued to occupy the position of secretary and treasurer of the local lodge, and Mr. Sox always brought receipts therefor.

. C. B. Smith, the secretary and treasurer of the local lodge of appellant, testified that his construction of the constitution and by-laws of appellant was that a member could pay his dues at any time within the quarter without losing any accrued rights, and that he had given out this information to the membership generally.

On the testimony of the secretary and treasurer, and the testimony with reference to respondent having complied with the instructions of an unknown person in the lodge office of appellant, the case was submitted to the jury; the motion for directed verdict having been refused. Without this testimony there would have been no issue to submit to the jury, and under the admission of counsel for appellant and the pleadings, respondent would have been entitled to a directed verdict for $150.00, with interest until such date as could have then and there been determined when a legal tender of the $150.00 had been made by appellant to respondent.

As aforesaid, appellant objected to the admission of the testimony regarding instructions of an unknown person in the local office of appellant, and the sending of the dues through Mr. Sox in accordance therewith, and alleges error: (a) That the statement as to what was told by an unidentified person in the lodge room was hearsay; (b) that the designation of Sox by this unidentified person could not constitute Sox the agent of the Brotherhood for the collec-

tion of dues; (c) that this testimony left in the minds of the jury an inference that payment to Sox was binding on it, and was prejudicial.

We will, therefore, take up, first, appellant's Exception 2, relating to the admission of testimony of respondent as to conversation had with unknown person in office of the lodge room, which was admitted in evidence for no other purpose, of course, than to establish agency. While it is a well-established rule of law in this State that the Courts abhor forfeitures and that very slight evidence will suffice to support a finding that a waiver of the right of forfeiture has occurred; yet, as stated by Mr. Justice Bonham, writing the opinion of the Court in *Perry v. Sovereign Camp, W. O. W.*, 172 S. C., 456, 174 S. E., 397, 401, after setting forth the above rule, continued: "But it [the law], does not assume to 'prevent' one unless there is a foundation in fact or law to justify it. The sympathetic heart of the presiding Judge induced his generous hand to close on empty air in his effort to prevent a forfeiture."

In that case, the Circuit Judge who tried it overruled a motion for nonsuit, stating: " 'The Courts will seize on any circumstance to prevent a forfeiture, and this Court is going to reach out right far to find some circumstance to prevent a forfeiture, I may be seizing on air, but I don't think so.' "

So it appears that the trial Judge in the case at bar allowed his magnanimous heart to run away with his judgment in the admission of this testimony.

It would indeed be a dangerous precedent to say that an unknown person sitting in the office of a fraternal organization, without any explanation of his presence in said office, and without the slightest show of any authority therein, who himself had no power to accept dues, could authorize dues paid to some individual, merely a member of an organization, and thus create an agency which would be binding. Such testimony was totally irrelevant and inadmissible, because, if absolutely true, could not possibly create Mr. Sox the agent of appellant, so as to be binding upon appellant.

We know of no authority upon which this testimony was admissible, and none has been cited; and the admission of this testimony was undoubtedly prejudicial to appellant.

We now consider if the testimony of the secretary and treasurer of the local lodge that under his interpretation and construction of the by-laws and constitution of appellant dues paid at any time within the quarter prevented the forfeiture of any accrued benefits, and that he had given out this information (misinformation), to the membership generally, all of which was in direct conflict with the plain and unambiguous provisions of the said by-laws and constitution, to the effect that the dues must be paid within the first month of the beginning of the quarter, otherwise, all accrued rights and benefits of, in, and to the death benefit department shall be deemed to have been forfeited, made an issue for the jury.

A portion of the dues paid by the members of the local lodge was regularly transmitted by the secretary and treasurer of the local lodge to appellant and he was therefore to this extent the agent of appellant. See recent case of *Greer v. Equitable Life Assur. Soc. of U. S.* (S. C.), 185 S. E., 68, and Section 8072, Civil Code, 1932.

Section 8047 of the Code of 1932, provides: "No subordinate body or any of its officers or members shall have the power or authority to waive any of the provisions of the laws and constitution of the association, and the same shall be binding upon the association, and each and every member thereof and their beneficiaries."

In the case of *Weathers v. Sovereign Camp, W. O. W.*, 119 S. C., 402, 112 S. E., 44, 48, the insured had paid his dues to be reinstated, but had not furnished a certificate of health as required by the by-laws and constitution, and this was not called to his attention by the secretary of the local lodge. Upon the death of the insured, the Sovereign Camp of the W. O. W. refused payment of his death claim. In passing upon this case, the Court said: "If the omission was

intentional, it was a fraud upon the rights of the insured; if it was merely a mistake, then justice and fair dealing would not allow the defendant to profit by the errors of the person whom it had selected as its representative. This would be allowing the defendant to take advantage of its own wrong."

In the case at bar it could be said that all of the testimony negatives the idea that the insured or the beneficiary in anywise acted upon or was misled by the interpretation placed upon the by-laws and constitution of appellant by the secretary and treasurer of the local lodge, since the record shows that all payments of premiums or dues, approximately 60 in number, were made within the first month of the quarter in which they became due, save and except the dues becoming due for the quarter beginning April, 1928, the occasion for this litigation, and that even as to these dues an attempt was made to pay them within the month of April, 1928, when respondent went to the office of the local lodge for the purpose of paying same to the secretary and treasurer, who was not there to receive the dues. On the other hand, if the insured, Mr. Thomas, and the beneficiary under the death certificate, the respondent herein, had known that the dues must necessarily be paid within the first month beginning the quarter for which dues became payable and were not lulled into security by the statement of the secretary and treasurer of the local lodge that dues could be paid at any time within the quarter without the loss of accrued benefits, then would they or not have made some inquiry of Mr. Sox when he failed to deliver to them a receipt for the April, 1928, dues within that month, and when he gave them a receipt dated in May, 1928, would they not have made some inquiry as to whether the payment made in May prevented loss of accrued benefits; and would Mr. Thomas, the insured, have undertaken to build anew a burial fund at the age of 78 years?

We think this testimony made an issue necessary to be submitted to the jury under the case of *Weathers v. Sov-*

*ereign Camp, W. O. W., supra,* notwithstanding the fact that the insured had the right to pay the dues for the quarter beginning April, 1928, in May, 1928, and become reinstated for the purpose of building up a new death benefit, and had the right to continue to make payment of his dues promptly.

Having sustained appellant's second exception, the case is remanded to the County Court of Richland County for a new trial.

Reversed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE CARTER dissents.

MR. JUSTICE CARTER (dissenting): Not being able to agree with the conclusion reached in the leading opinion in this case, I most respectfully dissent, and shall, in a brief way, state my reasons therefor.

The action by Mary Frances Waites, as plaintiff, against the defendant, Brotherhood of Maintenance of Way Employees, commenced in the County Court for Richland County, is a suit for recovery of judgment for the plaintiff as the beneficiary under a certain insurance policy issued by the defendant upon the life of one G. W. Thomas. In this connection I quote the following allegations from the plaintiff's complaint:

"That G. W. Thomas, late of the county and State aforesaid, held the certificate of the defendant, Number B-85504, which provided, among other things, that upon the death of said G. W. Thomas the defendant promised to pay to the beneficiary named in said certificate, who was Mary Frances Waites, the plaintiff herein, the sum of Five Hundred ($500.00) Dollars.

"That while said certificate was still in force and effect, the said G. W. Thomas died and that as a result thereof the defendant became indebted to this plaintiff in the sum of Five Hundred ($500.00) Dollars, with interest thereon

from the first day of January, 1934, at the rate of six per cent (6%) per annum.

"That although due and timely notice of said death has been given to the defendant, payment upon said claim has been refused."

Judgment was asked for the plaintiff in the sum of $500.00, together with interest thereon from January 1, 1934, at 6 per cent. per annum.

In its answer the defendant admitted the execution of the policy in question, but claimed "that by reason of default by G. W. Thomas in the payment of one installment of his dues within the time limited that the benefit was reduced in accordance with the Constitution and By-Laws to $150.00. * * *" This $150.00 the defendant admitted to be due the plaintiff.

The case was tried in said Court before Honorable A. W. Holman, County Judge, and a jury, June 21, 1935, resulting in a verdict for the plaintiff for the sum of $500.00, and from judgment entered on the verdict the defendant has appealed to this Court, imputing error to the trial Judge in the particulars set out in the exceptions. In the exceptions, appellant, in connection therewith, quotes at length from the record, but in the brief filed with this Court appellant sums up the points involved, from its viewpoint, in the appeal in the following brief statement:

"1. Refusal to direct a verdict for the defendant on the evidence and under the terms of the by-laws governing the contract between the parties.

"2. Error in the admission of testimony to establish agency.

"3. Error in the Judge's charge in submitting to the jury a question which was precluded by the terms of the by-laws and was not applicable to the facts as proven.

"4. Inconsistent charge of the Court."

The record shows that the policy in question was duly issued by the defendant to G. W. Thomas, and that the

plaintiff herein was made the beneficiary under said policy; she being the niece of the insured. The appellant concedes that all of the premiums on said policy were paid, and further concedes that all of the said premiums were paid promptly, as required under the contract in question, except one, contending that one of the premiums which should have been paid during the month of April, one year, was not received by the insurer until the month of May of that year, and further contends that because of the insurer not receiving the money for this premium until in the month of May the amount which the plaintiff can recover in this action was thereby, under the rules and by-laws, reduced from $500.00 to $150.00, and appellant offered to pay said sum of $150.00. In connection with this contention, appellant calls attention to certain of the by-laws and regulations bearing on the subject. One regulation to which special attention is called reads as follows: "All dues and properly levied assessments must be paid in advance on or before the first day of January, April, July and October of each year to an authorized representative, provided, however, that a member paying his dues within the first month of the current quarter will be considered in good standing and entitled to all benefits and privileges of the organization."

It is appellant's further contention that under another provision of the by-laws in question it was provided that if a member failed to pay his dues and assessments as provided for in the article above quoted, such insured person shall be deemed to be delinquent and to have forfeited all rights and benefits in the death benefit department, "except that such member may regain such rights if such member prior to death and during the month, the first day of which said dues and/or assessments become payable, pays said dues and assessments in full."

It is also the contention of the appellant that the by-laws applicable to the question involved further provided that new or reinstated members who had reached the age of 55 at the

date of reinstatement may procure all the benefits of death benefit department on certain terms as there set forth, and in this connection quotes the following from said provisions: "If such member had a continuous membership for thirty-six months next preceding his death, the sum of $150.00."

As stated by appellant, Mr. G. W. Thomas had been a member of this organization for a number of years and had kept up his dues and assessments. One installment became due April 1, 1928, but under the terms of the by-laws this payment could have been made any time during the month of April and still have kept the beneficiary in good standing. It is the contention of appellant that the appellant did not receive this payment until May 21, 1928, and that under the terms of the by-laws applicable hereto Mr. Thomas forfeited his original status, under which he would have been entitled to the sum of $500.00 of death benefit, and further contends that being over 55 years of age at the time of his reinstatement by payment made May 21st he took another classification, "and having been in good standing for thirty-six months thereafter was entitled at his death to only $150.00."

It is conceded that the said G. W. Thomas had been a member of the association involved herein for a great number of years and, as stated above, had paid all of the premiums promptly, except one premium due on April 1, 1928, but it clearly appears that the appellant received this premium money not later than May 21, 1928. The insured had a position at what is known as "crossing watchman" in the City of Columbia. His duty required him to work on Sunday, at least on the Sundays when the secretary and treasurer of the local organization was in the City of Columbia, at which time said secretary collected or received the dues from the members of the organization. It also appears from the record before the Court that Mr. Smith, the agent for the collection of the dues in question, did not live in Co-

lumbia, but lived in Ridge Spring, S. C., and came to Columbia only on the third Sunday of each month, and it was his custom while there on such occasions to collect dues from the different members of the organization at the regular meeting of said organization, at which time or times the insured was required to be on his post of duty as crossing watchman. Prior to the time the secretary in charge had his residence at Ridge Spring, the secretary who made the collections had his residence in the City of Columbia, and payment of the dues was then made to the said secretary in the City of Columbia. Mr. Olin Hughes was the secretary at that time. When Mr. Smith became secretary and had his residence at Ridge Spring, the insured in this case, it seems, had considerable trouble getting the money in question into the hands of the secretary. Having reached a ripe old age, this added to his trouble, and along about this time, it seems, his residence was at the home of the beneficiary, the plaintiff herein, Mary Frances Waites, and she undertook to assist him in getting the money for the premiums into the hands of the organization. There was testimony in the case tending to show that the office of the defendant was located on block 1600 on Main Street just above Efird's Store in the City of Columbia, and that that organization met in said place. In this connection we call attention to certain testimony of the plaintiff tending to show that the insured not being able to attend to the matter of making payment of the premiums in question, she went to the place above referred to as the regular place and time of meeting of the organization, and where premiums were regularly received for the purpose of paying the dues of the insured to the officer authorized to receive such money, but he was not there, and there is also testimony from which it may be reasonably inferred that she was at that place and time, by one man therein, presumably a member of the organization and speaking for the organization, instructed to pay over the dues in question to a Mr. Sox, who, it appears, lived near her home,

which was at that time the home of the insured, and that he would attend to the matter. In this connection I may state that, in my opinion, considering all of the surrounding facts and circumstances, it may be reasonably inferred that the man to whom Mrs. Waites referred was in charge at that place and time, and she had a right to obey such orders or instructions and seek the said Mr. Sox to turn over the said premium money to him for the defendant. The evidence tends to show that the money in question was delivered to the said Mr. Sox by the plaintiff within the time required, and if he had the right to receive the same for and on behalf of the defendant, then there can be no question that the defendant was under obligation to pay the plaintiff the full amount sued for. In this connection the appellant contends, in effect, that the said Mr. Sox was evidently a friend of the insured and the beneficiary and was, therefore, acting for them and not for the association that issued the policy, and that when the said Mr. Sox failed to put the money in question into the actual hands of the secretary referred to during said month of April the insured lost his place and, therefore, the beneficiary is not entitled to receive any sum except the sum of $150.00. I do not think that this is the only inference to be drawn from the record in the case, but think that the record warranted the inference and conclusion that the said Mr. Sox acted for and on behalf of the association. We think the record warrants the conclusion that the said Mr. Sox acted in the capacity referred to for some time, and in this connection had been performing a real service for the organization, and, therefore, the paying over of the money to Mr. Sox was, in effect, making payment to the organization. The record further shows that Mr. Sox continued to collect the dues in question and deliver the same to the association, and also handled the receipts involved in connection with the dues. The premium in question could not be delivered to the secretary at the time referred to because he was not there.

I think it is also proper for me to call attention to the fact that there was testimony introduced in the record tending to show that the secretary, whose duty it was to make the collections, often instructed the members generally to the effect that if the premiums were paid any time during the quarter it would be all right, that it was not necessary to pay the premiums during the first month of the quarter, and that this was common practice. It seems to be the position of appellant that there is no proof that the plaintiff herein was misled by such practice. The plaintiff, the beneficiary, relied upon the instruction given her by the man she found at the said offices or place of the association in the said City of Columbia, and, as stated, she testified she went by his instructions. The reasonable inference to draw from the entire record is that the members of the association and the beneficiaries under the policies issued by the association were led to believe that the policies so issued by the association were being kept alive and in proper shape. The secretary, whose duty it was to handle the collections, testified in the case and stated clearly that he had instructed the members of the association that payment might be made at any time within the three months, and that it was not necessary to make payment the first month of such quarter in order to protect their rights and keep the policies in full force for the amount named therein. This was the effect of his testimony. It is the contention of appellant that such practice was in violation of the rules and by-laws governing the policies issued by the association, and that such instruction by the secretary of the local lodge was not binding upon the organization. I think it may be reasonably assumed that the practice referred to having existed for a long time, that is according to the testimony, the head office must have had knowledge of this practice, and I further think that it would not be fair to allow the rights of the plaintiff to be defeated under the facts and circumstances surrounding the case. It may be reasonably inferred from all the facts and circum-

stances in the case that the company intended to waive the requirement to have payment made and accepted only on the particular date named in the policy, and had by its action and custom permitted the secretary to permit the members to make payment as testified to by the secretary. It is certainly reasonable to conclude that the association received the money that was paid under such circumstances without objection. Under such circumstances it would not be right and proper to allow the defendant to be benefited by having permitted its officer to make collections at such times as suited his convenience and receive the money from the officer under such circumstances in violation of the rules and at the same time defeat the rights of its members. In my opinion, the trial Judge committed no error in submitting to the jury the issue of the plaintiff's right to recover the full amount sued for.

In passing upon the appeal I have not considered the exceptions separately, but in reaching my conclusion I have kept the same in mind, and it is my opinion that the exceptions should be overruled as a whole, and the judgment of the lower Court affirmed.