14867

WIMBERLY v. SOVEREIGN CAMP, W. O. W.

(2 S. E. (2d), 532)

Messrs. *Lide & Felder* and *Louis Rosen,* for appellant,

Messrs. *Thomas H. Peeples* and *Zeigler & Brailsford,* for respondent,

April 17, 1939.

The opinion of the Court was delivered by Mr. Justice Baker.

Action by the surviving beneficiary (respondent) on a policy of insurance (denominated "Beneficiary Certificate") issued by appellant to Dr. John S. Wimberly in the sum of $2,000.00. Dr. Wimberly was respondent's father, and had been a member of the Branchville Camp (Edisto Camp No.

142) of the Woodmen of the World continuously since its organization in 1901.

The original policy of insurance issued to Dr. Wimberly on or about July 9, 1901, was in the maximum amount of $1,000.00, but on or about September 10, 1908, this policy was surrendered, and upon new application, the policy sued upon was issued.

In the application for both policies, Dr. Wimberly consented and agreed that the application and all of the provisions of the ·constitution and laws of the appellant then in force or hereafter adopted should constitute the basis of and form a part of any policy of insurance (beneficiary certificate) that might be issued to him by appellant; and he also agreed that any failure on his part to comply with the laws, rules and constitution then in force or thereafter adopted, should make his policy void, and all rights of any person thereunder should be forfeited; and he further agreed to pay all assessments and dues which he might become liable for while a member of appellant as required by its constitution, laws, rules and by-laws.

In July, 1932, appellant canceled Dr. Wimberly's policy for his failure to pay the installment falling due thereon for the month of June, 1932, within the said month of June. It appeared from the official receipt of the camp clerk, who was dead at the time of the trial of this case on Circuit, and from a statement in writing in the form of affidavit, made by the deceased camp clerk, that the June, 1932, installment was paid either on July 1 (date on receipt), or July 9, 1932 (shown by statement).

The constitution, laws and by-laws of appellant in effect in June and July, 1932, provide that if the installments or dues are paid monthly, payment thereof must be made on or before the last day of the month for which due, and failure to so pay suspends the member, and his beneficiary certificate shall be void. The constitution, laws and by-laws also provide:

"Sec. 65. Any person who has become suspended because of the non-payment of any installment of assessment, if in good health, may within three calendar months from the date of his suspension again become a member of the Association by the payment of the current installment of assessment and all installments of assessments which should have been paid to maintain him as a member. Whenever installments of assessments are paid by or for a person who has become suspended for the purpose of again making him a member, such payment shall be held to warrant that he is at the time of making such payment in good health, and to warrant that he will remain in good health for thirty days after such attempt to again become a member, and to contract that such installments when so paid after he has become suspended for nonpayment of assessments shall be received and retained without waiving any of the provisions of this section or of these laws until such time as the Secretary of the Association shall have received actual, not constructive or imputed, knowledge that the person was not in fact in good health when he attempted to again become a member * * * ."

"(b) Any attempt by a suspended person to again become a member shall not be effective for that purpose unless such person be in fact in good health at the time and continue in good health for thirty days thereafter, and the payment of any unpaid installment of assessment shall be a warranty that such person is at the time in good health and that if the warranty is not true the certificate shall be null and void."

Section 82 (a) is to the effect that no officer, employee or agent of the Sovereign Camp, or of any camp, has the power, right or authority to waive any of the conditions upon which beneficiary certificates (policies of insurance) are issued, nor shall any custom of any camp or any number of camps—with or without the knowledge of any officer of the association—have the effect of so changing,

modifying, waiving or foregoing the constitution, laws and by-laws, and the requirements and conditions of the policy of insurance.

At the conclusion of all testimony, appellant moved for a directed verdict in its favor "for the reason that the testimony unquestionably shows that the deceased did not pay the installment for the month of June, 1932, dues for that month; and did not pay them * * * during and including the said month, * * * and there is no testimony to show any waiver on the part of the defendant as to such payment."

The trial Judge apparently submitted the case to the jury on the question of waiver, since under the testimony, which we will later herein briefly discuss, there can be no recovery on the contract of insurance unless there is some evidence of waiver to submit to a jury, the fact-finding arm of the law.

The exceptions raise the issue that there was no evidence of waiver; and a secondary question as to the admissibility of a statement in the form of affidavit of H. Berry, a former camp clerk of Edisto Camp No. 142, the camp in which Dr. Wimberly carried his membership.

We will dispose of the secondary question first.

H. Berry was dead at the time this case was tried on circuit, but he was the camp clerk in June, 1932, and had received the June, 1932, installment from Dr. Wimberly, either on July 1, as shown by the official receipt issued therefor and in evidence, or on July 9, as shown by the statement. It will readily be seen that this statement was not offered to prove the date of the payment of the June, 1932, installment, but to prove the dates of the payment of monthly dues by Dr. Wimberly from December, 1930, to June, 1932, and the dates on which the camp clerk remitted these dues to the home office of appellant at Omaha.

Appellant's exception to the admission of this statement in evidence imputes error on three grounds, and in appel-

lant's printed argument, two additional grounds are added. But when we have recourse to the record, we find that at the time the statement was offered, its admission was objected to solely on the ground, "Mr. Berry is dead."

This statement was nothing more than a declaration ██ (reduced to writing) against interest, or an admission by an agent of the appellant acting within the scope of his authority, and made by him as appellant's agent with reference to the dealings had by appellant through him as its agent with Dr. Wimberly as disclosed by his records. There is no suggestion that appellant questions the truth of the facts as set forth in the statement or affidavit; and the objection to the admissibility thereof having been made on the sole ground above stated, and Mr. Berry being the agent of appellant for the collection and forwarding to it of installments or premiums on the beneficiary certificate or policy of insurance, it would appear that the following taken from 22 C. J., 892, Sec. 1089, is applicable in principle: "If a person having peculiar means of knowing a fact makes a written entry thereof which is against his interest at the time when it is made, and such person would, if available as a witness, be competent to testify as to such fact, the entry is, after his death, competent evidence of the fact even as between third persons. Under such circumstances it is not necessary that the entry should have been made at the time of the transaction."

Any evidence that assists in getting at the truth of ██ the issue is relevant and admissible, unless because of some legal rule it is incompetent. *State v. Petit*, 144 S. C., 452, 142 S. E., 725. And "Hearsay" evidence objection cannot be first made on appeal. *Perry v. Mabus*, 135 S. C., 292, 126 S. E., 487.

Appellant's exception to the admission of this testimony is overruled.

We now come to the main issue in the case: Was there any evidence of waiver of a strict compliance with the terms and conditions of the contract of insurance?

A brief statement of the testimony becomes necessary:

The sworn statement of H. Berry, clerk of the camp, showed that on only two occasions from December, 1930, until June, 1932, did Dr. Wimberly pay his monthly installments within the month for which due, the payments being made on from the 2nd to the 8th of the succeeding month; and that the dues so paid were remitted to the home office of appellant by Mr. Berry on from the 6th to the 10th of such months in which the payments were made, the date of the remittance being in nowise governed by the date of payment.

W. P. Appleby has been a member of the Edisto Camp No. 142 about thirty-four years, and has throughout that period of time paid his dues "nearly always" after the last day of the month for which they were due, as late as the 9th of the following month, and his dues were always accepted. He was the clerk of the camp for three years. While acting as such clerk he accepted dues up to the sixth or seventh of the succeeding month, and then sent in his report to the home office of appellant. All receipts for collections were dated the last day of the month, and the records did not show the dues as being received late. If a member paid after he sent in his report (the report would show such member suspended), he would then make out a separate report showing such member reinstated, and the appellant always accepted the money. At the time he was clerk of the camp, Dr. Wimberly was a busy man, and nearly always paid late. As clerk of the local camp, he did not have the right to reinstate a member, but the appellant never questioned such attempted reinstatement on his part.

J. G. Smoak has been a member of the same local camp for twenty-six years, and the then clerk of the camp would come to his store and collect his dues. He paid his dues ninety per cent. of the time between the first and eighth of the month following for which they were due. He was clerk of the camp for twelve years, and followed the custom of waiting to collect dues from members until the month fol-

lowing. He sent off his reports to appellant by the tenth of the month, and it was understood by the members that if they paid by the tenth of the month, "it would be all right." Appellant complained of the lateness of his reports one time and asked him to "step them up." Appellant did not know why his reports were not sent in until the tenth of the month. Dr. Wimberly's dues were collected in the same way as the others. The payments made up to the tenth of the month were shown as paid within the month for which they were due. The only reports which showed payments made late were the supplemental reports of dues collected after the tenth of the month.

L. H. Fairey was a charter member of Camp No. 142—succeeded H. Berry as clerk of the camp. Berry was clerk for five years—makes his reports on the fifth of the month, and accepts dues for the prior month up to the fifth.

Frank Smoak was also a charter member of Camp No. 142. Practically all of the clerks of this camp had the same procedure in the collection of dues—would go or send after them the first few days of the month succeeding the month for which the dues were payable.

The foregoing, and other testimony in the case established that the strict provisions of the Constitution and By-Laws of the Association, as to the collection and remittance of dues, had never been followed at the Branchville Camp. On the contrary, during the thirty-odd years of its existence, an uninterrupted custom prevailed: For the clerk to call on the members to collect their dues; for such dues to be paid within any reasonable time after the first of the month (instead of before the last day of the month); for the clerk to date all receipts the same day and to include with his remittance all monies received up to the time of sending off his report; and for the clerk to accept even later payments and make special remittances to the Sovereign Camp.

There is no question but that a member had the right to pay his dues at any time within three calendar months from the last day of the month for which he failed to pay dues,

if in good health, and the payment of dues, installments or assessments in arrears warrants that such member is then in good health and will so remain for thirty days thereafter. In this way, any member who was in good health had the right under his contract to again become reinstated within three months from his suspension, but subject to the "good health" provisions of the contract of insurance, and appellant was compelled to accept the payments of installments or dues. Dr. Wimberly had been partially paralized since about the latter part of December, 1931, was not in "good health" when his dues or installments for June, 1932, were sent to appellant on or about July 15, 1932 (but paid to the local camp clerk not later than July 9, 1932), and the appellant having knowledge of this fact, refused to accept the dues, and others attempted to be paid for the succeeding months. Dr. Wimberly did not die until August, 1936.

Therefore, let us here and now dismiss from consideration the fact that appellant accepted dues or installments without question from members, paid after the monthly report of the local camp clerk had been sent in, and on which report such members were shown as suspended. Under the terms of the contract of insurance, this was no evidence of waiver. *White v. Sovereign Camp, W. O. W.,* 184 S. C., 215, 192 S. E., 161.

There is however, other evidence in this case from which more than one reasonable inference could be drawn that appellant's manner and custom of handling its insurance business at the Branchville Camp (Edisto Camp No. 142), over the period of a great many years amounted to a waiver of the strict compliance with the terms of the contract of insurance with reference to the payment of dues and installments within the calendar month for which they became due.

It is not contended that the clerks of the local camp in collecting monthly dues during the first portion of the month succeeding the month for which dues were payable, and which were regularly reported as having been paid within

the month for which due, were accepting such dues and installments under the reinstatement provision of the policies of insurance. However, in the case under discussion, the appellant did not refuse to accept the June, 1932, dues or installment of Dr. Wimberly paid to the clerk of the local camp not later than July 9, 1932, because it was not paid before the monthly report of the local clerk was mailed appellant at its home office, Omaha, but because the June, 1932, installment was not paid to the clerk of the local camp within the month of June, 1932, and Dr. Wimberly was not then in "good health."

Section 8047 of the Code of 1932, provides that no officer of a subordinate body shall have authority to waive any of the provisions of the laws and constitution of fraternal benefit societies; but we also have Section 8072 of the Code defining who are agents of fraternal associations with insurance features, and such section declares that when under the laws, rules and regulations of such society, etc., members of the same are required to pay premiums, dues or other payments to any other member or person for the purpose of transmitting the same to the order or association, then such member or person, by whatever name or title known and called, so collecting such premiums, dues, assessments and other payments, shall be deemed and considered the agents of such said fraternal insurance, or beneficiary society, order or association.

In the case of *Hancock v. National Council, Junior Order United American Mechanics,* 180 S. C., 518, 186 S. E., 538, 542, after quoting Section 8072 of the Code of 1932, and several of the by-laws of the appellant order requiring the assessments and insurance premiums to be paid to the financial secretary of the local lodge, it is stated: "The portion of the section, above quoted, leads to the inescapable conclusion that the financial secretary of the local council to whom the members thereof are required by the national laws of appellant to pay their dues, taxes, and assessments, is the agent of appellant through whom it conducts its in-

surance department. See case of *Crumley v. Sovereign Camp, W. O. W.,* 102 S. C., 386, 86 S. E., 954."

In *Dillingham v. National Council, Jr., O. U. A. M.,* 113 S. C., 430, 102 S. E., 721, 722, Mr. Justice Gage, speaking for the Court and commenting on the effect of Section 2770, which is the same as Section 8072 of the Code of 1932, hereinabove referred to, and in connection therewith discussing Section 2755 of the then Code, which is Section 8047 of the Code of 1932, observed: "Much has been said in the argument about two apparently conflicting statutes, sections 2755 and 2770 of the Code of Laws. The former is a section of a comprehensive act to 'regulate and control fraternal benefit associations,' such as the defendant is; and the section in question very properly declares that the subordinate lodges of a supreme governing association shall not have the power to waive the laws of the latter. See section 7 of the act (26 St. at Large, 555). Section 2770 is an independent statute, enacted the same day as the statute just referred to; and it properly declares that when members of orders like the defendant come to make their initial payment of dues to a person designated by the laws of the order to receive them, in such a case the recipient of the dues shall be deemed the agent of the general order. * * *."

It is an elementary principle of law that the knowledge of an agent with reference to matters occurring within the scope of such agent's duty is imputable to the principal, and the principal is bound by the knowledge of such agent. And this imputable knowledge has corroboration in the fact the respective clerks of the Branchville Camp did not make their reports of collections until from the 4th until the 10th of the succeeding month. And appellant complained only one time concerning the tardiness of these reports over a period of a great many years.

We are not here considering the manner in which one isolated case or member was dealt with, but the established method and custom of appellant's agents in the collection

and transmission of dues and installments from the entire membership of this local camp, the insured, Dr. Wimberly being one of the members, and whose policy was attempted to be cancelled.

The various clerks serving this camp by their method of collecting and remitting dues and installments after the time provided, if a strict compliance with the contract of insurance was to be enforced, had just as effectually lulled the members of the camp into a sense of security that their insurance was at all times in full force, and not dependent upon the "good health" of the member, as if such clerks had made the positive statement to each member that it was not necessary to pay the dues and installments within the month for which they were due in order to keep their insurance contracts in unconditional force.

In *Waites v. Brotherhood of M. of W. Employees,* 181 S. C., 215, 186 S. E., 276, it was held that testimony of secretary and treasurer of fraternal association's local lodge, that he informed membership thereof generally that under association's by-laws and constitution, payment of quarterly dues at any time within quarter prevented forfeiture of accrued benefits made issue for jury in action for death benefits to which defendant claimed that insured lost all right by failure to pay premium within first month of quarter, as required by such by-laws and constitution.

Even without having recourse to the salutary principle that the law abhors forfeitures, and will seize upon slight evidence to prevent one, the facts of this case, all of which have not been touched upon, compelled the trial Judge to submit the case to the jury. Ordinarily, the issue of waiver is a question of fact to be passed upon by the jury, unless only one reasonable inference can be drawn from the testimony, in such case, it becomes a question of law, and one to be settled by the Court.

Judgment affirmed.

Mr. Chief Justice Stabler, and Messrs. Justices Bonham and Fishburne and Mr. Acting Associate Justice H. F. Rice concur.

Mr. Justice Carter did not participate, on account of illness.