15061

CLARDY v. SOVEREIGN CAMP, W. O. W.

(8 S. E. (2d), 748)

September, 1939.

*Messrs. Wright & Burroughs,* for appellant,

*Mr. E. S. C. Baker,* for respondent,

April 10, 1940.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM.

William Bryan Clardy was a member of the fraternal order known as the Woodmen of the World. His certificate of membership in Camp No. 522 was for the sum of $1,-000.00, payable to his wife, Mrs. Evie V. Clardy, upon satisfactory proof of his death, provided he was in good standing at the time. He died on or about September 10, 1933. Respondent brought this action under date of August 21, 1937, setting forth the facts above set out, and alleging that William Bryan Clardy had performed all of the conditions of his membership, as set out in his certificate and as required by the constitution, rules and by-laws of the order; that payment had been demanded and refused and liability denied.

For answer, the defendant admitted the allegation that William Bryan Clardy was a member of the order, and that he had been insured in the sum of $1,000.00 with his wife, the plaintiff, as beneficiary as alleged, but that he was suspended for the nonpayment of his assessments, his certificate of insurance rendered null and void, and was of no effect at the time of his death.

The plaintiff had anticipated this defense by alleging in her complaint " *  *  * that the said certificate and contract of insurance was valid and in full force and effect at the time of the death of the said William Bryan Clardy, *  *  * ; That the said William Bryan Clardy has not done any act or thing rendering the same void, *  *  *." These allegations of the pleadings constitute the fundamental issues upon which the case was tried. The plaintiff introduced testimony tending to prove that the defendant, in its treatment of its members, had acquiesced in the practice of accepting the dues of suspended members and reinstating them without requiring them to furnish a statement or certificate of good health, and it was urged that this custom prevailed in the *Clardy case*.

■ At the proper time, defendant made a motion for a directed verdict in its favor. The presiding Judge did not rule on the motion but stated that he would prefer to wait a verdict by the jury, after which he would rule on the motion if it should be necessary. Counsel for both sides seem to have agreed to this, but this Court takes occasion to say that it does not look with favor upon this practice. The movant, indeed, both parties, are entitled to have the Court act upon the motion when made. The jury is liable to be influenced to the opinion that the Court does not think there is merit in the motion. The jury found a verdict for the plaintiff.

The controlling issue made by the exceptions is that of waiver. Did the defendant waive the requirement of its constitution and by-laws, which required that before William Bryan Clardy could be reinstated he show that he was in

good health, and would remain in good health for thirty days?

By the terms of its membership, and the provisions of its certificate of insurance, the insured, William Bryan Clardy, is bound by the constitution and by-laws of the order. The following provisions of the constitution and by-laws are pertinent:

" 'Section 63(a) In order to accumulate and maintain funds for the payment of the benefits stipulated in beneficiary certificates held by the members of this Association, as and when such benefits accrue, to maintain the reserves thereon and to provide for the payment of the expenses of the Association, every member of this Association shall pay to the Financial Secretary of his Camp one annual assessment each year of one monthly installment of assessment each month, as required by these laws or by the provisions of his beneficiary certificate, which shall be credited to and known as the Sovereign Camp fund; and he shall also pay such Camp dues as may be required by the By-laws of his Camp. Section 26(g).

" '(b) If he fails to make any such payments on or before the last day of the month he shall thereby become suspended, his beneficiary certificate shall be void, the contract between such person and the Association shall thereby completely terminate, and all moneys paid on account of such membership shall be retained by the Association as his liquidated proportionate part of the cost of doing business and the cost of the protection furnished on the life of said member from the delivery of his certificate to the date of his suspension.

" 'Such person, if in good health, may thereafter make a new contract with the Association, upon the same terms and conditions, by complying strictly with the provisions of these laws, contained in Sections 65, 66 and 67. See Section 26(g).

" 'Section 64. A person who becomes suspended for nonpayment of assessments or installments of assessment is not

entitled to any benefits of this Association, nor shall he receive the password or participate in any of the business or social proceedings of the Camp to which he had belonged.

" 'Section 65. Any member who becomes suspended because of the nonpayment of any installment of assessment, if in good health, may within three calendar months from the date of his suspension again become a member of the Association by the payment of the current installment of assessment and all installments of assessments which should have been paid to maintain him as a member. Whenever installments of assessments are paid by or for a person who has become suspended for the purpose of again making him a member, such payment shall be held to warrant that he is at the time of making such payment in good health, and to warrant that he will remain in good health for thirty days after such attempt to again become a member, and to contract that such assessments when so paid after he has become suspended for nonpayment of assessments shall be received and retained, without waiving any of the provisions of this Section or of these laws until such time as the Secretary of the Association shall have received actual, not constructive or imputed, knowledge that the person was not in fact in good health when he attempted to again become a member. Provided, that the receipt and the retention of payment of such installmnets of assessments in case such person is not in good health shall not make such person a member or entitle him or his beneficiary or beneficiaries to any rights whatever.

" 'Section 66. (b) Any attempt by a suspended person to again become a member shall not be effective for that purpose unless such person be in fact in good health for thirty days thereafter, and the payment of any unpaid installment of assessment shall be a warranty that such person is at the time in good health and that if the warranty is not true the certificate shall be null and void.' "

If it be admitted that there is some evidence of waiver as to some of the members of Camp 522, the question arises,

does that evidence apply to and control the case of William Bryan Clardy?

He was a member of this order from the date of the organization of Camp 522 in 1909. He had filled practically all of the offices of the camp and in 1932 he was clerk of the camp, or financial secretary as it was formerly called. It was his duty to collect the dues and mail them to the Sovereign Camp, and, if a member failed to pay his dues when due, it was his duty to mark him suspended and report the fact to the Sovereign Camp. He failed to pay his dues for September, 1932, on or before the last day of September, 1932, and in miking his report for that month he marked himself suspended. He attempted to reinstate himself by sending in his dues for September along with those for October, 1932. The Sovereign Camp returned these funds on the ground that his payments were not accompanied by the necessary proof that he was in good health. Plaintiff contends that the Sovereign Camp had misled him by its practice of accepting these payments without requiring the proof of good health. Was William Bryan Clardy in a position to claim that he was so misled? There is no proof that he had sent in the name of any suspended members who were known to the Sovereign Camp to be not of "good health." The Sovereign Camp did know that he was not of "good health." On April 28, 1931, he wrote the following letter to the Sovereign Camp:

"Myrtle Beach, S. C.
"April 28, 1931.

"Mr. John T. Yates,
"Omaha, Neb.
"Dear Sir:

"I am writing to see if there would be any chance to get a lone on my W. O. W. policy. The circumstances are these, my health has failed me, have been in hospital, am home now but Dr. keeps me in doors. Dr. Says I will never be able to work any more. I have no income except a small

two horse farm and really with farming conditions as they are, that means no money at all. I have three other policies and premiums on them are to be met have about $200 tax now due. I must have some money and cant borrow money on real estate at his times as the banks are loaded up. Cant afford to loose any policy with my health gone, cant afford to let my land sell for taxes. I know full well that the type of my policy with you do not carry a lone clause, yet at the same time it is value and understand that in special cases lones have been granted. If there is any chance for a lone I want to get the full amt allowed at present value. I shall out of that lone want to pay one years premium in advance. Please write me at once sending blanks & etc. I will be glad to furnish Dr's. certificate, etc. If you have a special blank for that purpose please send it also.

"Now if anything can be done I want it done quickly as I in need of the money at once. I am a member of Pinewood Camp 522 located at Stalvey, S. C. and am Clerk of said Camp. The loyalty and fraternal spirit of my W. O. W. members shown to me in illness is wonderful, and make me feel like I would like to live longer.

"Yours fraternally,

"W. B. Clardy."

On February 9, 1933, he attempted to furnish a certificate of good health in the following form:

"Application for Membership in Sovereign Camp
Woodmen of the World.

"The undersigned, a former member, in consideration of the fact that he is to again become a member of the Association, providing this application is approved by the President and Medical Director of the Sovereign Camp of the Woodmen of the World, hereby agrees that his monthly rate for the installment due at the date of suspension, and an amount equal to the subsequent installments during the period of his suspension, be charged against his certificate with interest at the rate of five per cent per annum, com-

pounded annually. The amount of said charge, together with the interest thereon, is to be deducted from the proceeds of his certificate at the maturity of same.

"In further consideration the undersigned, as a condition precedent to again becoming a member, hereby warrants that he is in sound bodily health and free from any disease or impairment of any nature whatsoever and that during the past five years he has not suffered from any mental or bodily infirmity resulting from accident or disease, except as follows: and that his health has much improved during the last two years.

"Signed this 9th day of Feb. 1933 at Myrtle Beach State of S. C.

"W. B. Clardy."

Thereafter, on the 25th day of February he sent in this:

"Application for Membership in Sovereign Camp Woodmen of the World

"The undersigned, a former member, in consideration of the fact that he is to again become a member of the Association, providing this application is approved by the President and Medical Director of the Sovereign Camp of the Woodmen of the World, hereby agrees that his monthly rate for the installment due at the date of suspension, and an amount equal to the subsequent installments during the period of his suspension, be charged against his certificate with interest at the rate of five per cent per annum, compounded annually. The amount of said charge, together with the interest thereon, is to be deducted from the proceeds of his certificate at the maturity of same.

"In further consideration the undersigned, as a condition precedent to again becoming a member, hereby warrants that he is in sound bodily health and free from any disease or impairment of any nature whatsoever, and that during the past five years he has not suffered from any mental or bodily infirmity resulting from accident or disease, except as follows: About two years ago I had a heart attack, but

for the last 18 mo. have been improving. Able to work now. "Signed this 25 day of Feb. 1933, at Myrtle Beach State of S. C.

"W. B. Clardy"

Clardy persisted from time to time in trying to reinstate himself by sending in his dues, which were returned. Finally the matter was terminated by the following letter from the claim department of the Sovereign Camp:

"May 18, 1933.

"522-S. C.
"Mr. William B. Clardy,
"Myrtle Beach, S. C.

"Dear Sir:

"We have before us your letter relative to payments of installments made by you under the beneficiary certificate issued on your life by this Association.

"As explained in our previous letter, under the provisions of the Constitution, Laws and By-Laws of the Association, if a member fails to make payment of any installment of the assessment due under his certificate on or before the last day of the month in which the installment is due, he automatically becomes suspended on the first day of the following month, and during such suspension his beneficiary certificate is null and void.

"The laws further provide that such suspended person must be in fact in good health when his delinquent installment or installments are paid by or for him and he must remain in good health for thirty days thereafter in order to revive his certificate and reestablish his beneficiary membership in the Association.

"As you were not in good health when you attempted to again become a member of the Association by making payment of your delinquent installments, the payment under the laws did not have the effect of reviving your certificate and we are therefore returning the refunding checks

and postal money order covering installments remitted on your account since you became suspended.

"If you will execute the enclosed health certificate and return to this office, together with the refunding checks and postal money order, also additional remittance to cover installment for the month of May of the current assessment, and your application for again becoming a member is approved, the matter of reviving your certificate and re-establishing your beneficiary membership thereunder will receive prompt attention.

"Yours very truly,

"Claim Department."

Clardy never did execute the health certificate thus sent him. He died September 10, 1933.

The trial Judge correctly instructed the jury that "waiver is the voluntary relinquishment of a known legal right." Can there be said to be a waiver here of the requirement that before Clardy could be reinstated he must furnish proof that he was in good health? When, already having evidence furnished by him before he was suspended that he was not in good health, they returned his payments until he furnished said certificate, which he never did.

"We may further say that, assuming the issue of waiver properly raised, we do not think the evidence proposed could have had any material bearing upon the question. The uncontradicted evidence was that Newell was constantly demanding the full number of convicts under his contract, * * * ." *Griffith v. Newell,* 69 S. C., 300, 48 S. E., 259, 260.

In the above-cited case, the Court approved the following charge by the trial Court: " * * * 'waiver' means acquiescence, and, where a party insists on carrying out the contract all the time, it is not a waiver * * * ."

Plaintiff plants its contention in regard to waiver upon the opinion of this Court in the case of *Wimberly v. Sovereign Camp, W. O. W.,* 190 S. C., 158, 2 S. E. (2d), 532.

The marked difference bteween that case and this is that it does not appear that Wimberly was ever suspended, nor that the Sovereign Camp had any information that he was being reinstated without furnishing proof of good health.

The case of *White v. Sovereign Camp, W. O. W.,* 184 S. C., 215, 192 S. E., 161, 164, is more in accord with the facts of this case than is the *Wimberly case.* From the *White case* we quote freely as follows:

"In discussing this case, we will keep in mind that salutary principle that the law abhors forfeitures, and will seize upon slight evidence to prevent one.

\* \* \*

"We now come to the second question raised by the appeal. The insured did not pay the premium or assessment for the month of March, 1936, within that month, nor for the month of April, within that month, but on the 16th day of May, 1936, procured a post office money order in the sum of $3.21, which he mailed to the financial secretary of the Camp to which he belonged and which was received by the financial secretary on the 18th day of May, 1936, the day of the death of the insured. Under the contract of insurance the insured had the right to pay up these dues and become reinstated, conditioned, however, upon the warranty that he was in good health at the time of the payment of same and would remain in good health for a period of thirty days. The insurer, appellant herein, had the right to accept said dues—more than that, was compelled to accept said dues or assessments, but was protected by the contract to the extent that the acceptance and retention by it of these dues was not a waiver of the condition that the insured was in good health and would remain in good health for a period of thirty days thereafter. Except for the provision in the contract, the acceptance and retention of these dues would be some evidence of waiver on the part of appellant; and the acceptance and retention of the assessments, dues or premiums from the insured, paid irregularly and after

the month for which they were due, from the time that the insured became a member of appellant, might be some evidence of waiver on the part of appellant, except for the fact that the insured had the right to pay when he did and become reinstated subject to the provisions of the contract, and appellant could not have refused these payments.

\* \* \*

" 'Before an insurance company can be held to have waived a forfeiture provided for in the contract, it must appear: (1) That it had knowledge of the act of the insured which worked a forfeiture; (2) that it entered into negotiations with the insured which expressly or impliedly recognized the continued validity of the policy; (3) that the insured was induced by such negotiations, of the character stated, or by conduct of the company, to incur expenses or trouble under a reasonable belief that the loss would be paid, the forfeiture waived.' *Gunter v. Philadelphia Life Insurance Company*, 130 S. C., 1, 15, 16, 125 S. E., 285, 290. See, also, *Corley v. Atlantic Life Insurance Company*, 179 S. C., 95, 183 S. E., 596."

It will be observed that even if Clardy had not been suspended, the by-laws of the order provide that he must be in "good health" at the time he applies for reinstatement. The Sovereign Camp had knowledge that he was not in good health. It would have been false to its duty to the many thousands of other members, the safety of whose insured interests depends on the faithful enforcement of the provisions of the constitution and by-laws of · the order, which require the payment of dues and assessments, if they accept such payment after the member has permitted his certificate to become null and void, when the order knows that the member is not in good health. No fraternal insurance order would long survive such practices.

We think it will not be attempted to be argued that Clardy was in good health when he attempted to reinstate himself. His written words and his actions show that he was not.

We have not undertaken to discuss each of the exceptions *seriatim,* but we have, in fact, passed upon those which make the cardinal issues of the case.

The judgment is reversed, and the case is remanded with instruction to enter judgment for the defendant.

MESSRS. JUSTICES CARTER and FISHBURNE and MESSRS. ACTING ASSOCIATE JUSTICES J. HENRY JOHNSON and E. H. HENDERSON concur.