218 S.C. 90 (1950)
61 S.E.2d 764
WOLFE ET AL.
v.
HERLIHY ET AL.
16421
Supreme Court of South Carolina.
October 27, 1950.
*91 Messrs. C.E. Summers, and Moss & Moss, of Orangeburg, for Appellants.
*92 Messrs. Felder, Rosen & Horger, of Orangeburg, for Respondents.
The following is the order of Judge Brailsford in the court below:
The questions before me arise on Exceptions by the plaintiffs to the Report of Honorable John S. Bowman, County Judge as Special Referee, dated December 6, 1949.
The complaint sets forth two causes of action, the first for actual and punitive damages for the alleged conversion of plaintiffs' property, and the second for the cancellation of a ten-year lease entered into November 14, 1944, between plaintiffs, as lessors, and the defendants, Herlihy and Winslow, as lessees.
The controversy out of which this litigation arises became active on April 13, 1949. On that date the plaintiff, Thomas R. Wolfe, who had the active management of the leased property for its owners, returned a check for April rent, which had been received by him on April 9, and by letter to the defendant, Palmetto Electric Company, took the position that the lease had been forfeited by the sale of "fixtures, etc.," and demanded immediate possession. The sale referred to was evidenced by a bill of sale executed by the defendants, Winslow and Herlihy, as president and as secretary *93 and treasurer, respectively, of Palmetto Electric Company, to Orangeburg Garment Company covering improvements made to and fixtures installed in the rented property during and preparatory to its occupancy by Palmetto Electric Company.
Shortly thereafter the defendants, Herlihy and Winslow, commenced an action against the present plaintiffs for a Declaratory Judgment fixing the rights under the lease.
Thereupon this action was commenced by the present plaintiffs, and the appointment of a receiver of the leased premises during the pendency of this action was sought.
The defendants in both actions filed demurrers, and both demurrers were heard before Judge Mann at the same time. He sustained the demurrer in the action for Declaratory Judgment, and that action has gone out of the picture insofar as the issues here involved are concerned.
Defendants' demurrer in this action was directed to the entire complaint, not to the causes of actions separately, and was on the grounds: (1) Insufficiency of facts to constitute a cause of action; (2) Prematurity; (3) Another action pending.
Judge Mann, by formal order dated May 23, 1949, overruled all three grounds of the demurrer. He also found that plaintiffs "have made out a prima facie case entitling them to have a receiver appointed during the pendency of the action * * *." By arrangement of counsel provision was made in the order for the filing of a bond in lieu of receivership.
In passing on the question of receivership, Judge Mann had before him affidavits of the defendants, Herlihy and Winslow, and an affidavit of plaintiff, Thomas R. Wolfe, These affidavits were naturally not before the Special Referee in passing on the merits and are not before me.
After defendants filed notice of intention to appeal from the order overruling their demurrer, plaintiffs moved before *94 Judge Mann for an order requiring the trial of the cause to proceed to judgment, and for an order of reference.
Both motions were granted by an order dated June 9, 1949, which, inter alia, provided: "It is further ordered that the issue of damages set forth in the first cause of action be, and the same is hereby, reserved and that all other issues of law and fact, together with any special matters which may arise, be, and they are hereby, referred to Hon. John S. Bowman, County Judge as Special Referee, to hear and determine and to report his conclusions to this Court with all convenient speed."
Following this Justice E.L. Fishburne, by order dated June 18, 1949, denied application made by the defendants for an order of supersedeas.
Pursuant to the order of reference the testimony was taken before Judge Bowman and he filed his report dated December 6, 1949, in which he concluded that the lease had not been forfeited but is still in full force and effect.
Originally, plaintiffs filed fourteen exceptions to the report, which raise the ultimate question of whether or not there has been such a disclaimer or disavowal of the relationship of landlord and tenant by the defendants as entitles plaintiffs to a cancellation of the lease.
Upon due notice to the defendants, when these exceptions were called up before me, plaintiffs moved for leave to file five additional exceptions. These, which are allowed, raise the ultimate question of whether or not the decision of Judge Mann overruling the demurrer to the complaint on the ground of insufficient facts is controlling on the merits; in other words, whether or not the report of the Special Referee is contrary to the law of the case.
It will first be considered whether the plaintiffs can be denied the relief sought in the second cause of action without doing violence to the construction placed upon the complaint and exhibits by Judge Mann in overruling defendants' demurrer.
*95 It is probably a sufficient answer to this question to point out that Judge Mann's order was proper if, under the allegations of the complaint, plaintiffs were entitled to any relief under either cause of action. The Code provides (Section 459) that a demurrer "may be taken to the whole complaint, or to any of the alleged causes of action stated therein." Since the defendants elected to demur to the whole complaint, and not to the causes of action separately, Judge Mann was not required, in passing on the demurrer, to go beyond the allegations of the first cause of action, if he found them sufficient to entitle plaintiffs to relief.
It follows that it is not implicit in Judge Mann's formal order that the allegations of the second cause of action are sufficient to entitle plaintiffs to a forfeiture of the lease.
Nor do I think that it can be fairly said that all of the material allegations of the complaint have been established by the evidence in the sense pleaded. The complaint speaks for itself and I will not undertake to summarize it here. The facts proved will be summarized and I will undertake to point out certain discrepancies, which, in my judgment, are material.
Following closely at times the Report of the Special Referee, the facts are, as follows:
The plaintiffs were on November 14, 1944, and now are the owners of a certain two-story store building situate on South Broughton Street in the City of Orangeburg. On November 14, 1944, they leased the lower floor of this building to the defendants, Herlihy and Winslow. This lease was to run for ten years, with rent graduated upward from Fifty ($50.00) Dollars per month for the first three years to Seventy-five ($75.00) Dollars per month for the last five years; the rent being payable monthly, "and all payments to be made on the first day of each month when the amount shall become due." It will be noted that this provision is not for the payment of rent monthly "in advance."
*96 At the time the lease was entered into the lower floor consisted of a room fifty feet wide by one hundred feet deep, with plate glass front, cement floor, metal ceiling and, in part at least, brick interior walls. Eight bowling alleys occupied the entire floor space, this bowling alley business having been operated by the plaintiff. Thomas R. Wolfe, and another as co-owners.
By its terms, the lessees were granted the right to "make such alternations and repairs to such property so leased so long as the same does not damage or prove detrimental to the building so leased."
In addition, it was provided "that the lessees will deliver to the lessors at the expiration of the term the premises in the same condition of repair as leased, natural wear and tear excepted."
There are no provisions in the lease as to forfeiture and none as to the ownership of any improvements made or fixtures installed by the lessees.
On the same date the lease was entered into, the plaintiff, Thomas R. Wolfe, and his co-owner conveyed to the lessees by bill of sale the bowling alleys and all of the furniture, fixtures and equipment used in connection with this enterprise.
The lessees continued to operate this business until about April, 1945, when the bowling alleys were dismantled and rather extensive alterations and improvements were made to the property. These were preparatory to its occupancy, in part, by Palmetto Electric Company and, in part, by Eutaw Finance Company, two corporations organized by the individual defendants, the one to deal in Westinghouse electrical equipment, and the other to do a finance business. These alterations and improvements need not be recited in detail, suffice it to say that they were for the purpose of adapting the leased property to the requirements of the two businesses. The electrical company was to be the main occupant *97 and a show room, demonstration room, warehouse space and a ramp in the rear of the building to handle heavy equipment were provided. These improvements and other installations which were made were paid for by the corporation.
After about sixteen or eighteen months the finance company was sold to Commercial Credit Company and that portion of the building formerly occupied by the finance company was leased to Commercial Credit. In order to provide the new tenant with more room, the partition wall separating space occupied by the finance company from the warehouse space of the electrical company was torn down and reconstructed at a different point.
No objection was at any time voiced by the plaintiffs to any of these alternations or changes or to any of the subleases involved.
There were no further changes in occupancy until about March 2, 1949, when Palmetto Electric Company went out of business. At that time the upper floor of the building in question was occupied by Orangeburg Garment Company. Learning some time in advance of the probability that the electric company would go out of business, the plaintiff, Thomas R. Wolfe, made some effort to purchase from the lessees the unexpired term. Failing in this, he requested that preference in subletting the premises be given to his tenant, Orangeburg Garment Company.
On March 2, 1949, the defendants, Herlihy and Winslow, sublet the entire ground floor to said Orangeburg Garment Company for the remaining term of their lease, subject to the rights of Commercial Credit Company to occupy a portion of the space for the remaining term of an existing sublease.
Contemporaneously with the execution of this sub-lease, Palmetto Electric Company, by Edward Winslow, president, and Fred W. Herlihy, secretary and treasurer, in consideration *98 of the sum of two thousand ($2,000.00) dollars, executed a bill of sale to Orangeburg Garment Company, the sub-lessee, which bill of sale is attached to the complaint as an exhibit. This instrument describes as the property conveyed thereby, "its right, title and interest in and to all improvements theretofore made * * * including electric fixtures, wiring, venetian blinds, drapes, screens, asphalt tile floor, celotex ceiling, partition walls, ramp and toilet and other plumbing". This instrument contains a warranty clause whereby the defendant, Electric Company, by the defendants, Winslow and Herlihy, as its officers, represented that it was the owner "of the above-described goods and chattels" and had full power to sell and convey the same.
The plaintiffs offered testimony that certain of the items listed in the bill of sale, such as the flooring, the ceiling and the partition walls, were installed therein in accordance with good building practice and upon such installation became "integral parts of the building".
In addition, the plaintiff, Thomas R. Wolfe, testified to a conversation had by him with the defendant, Winslow, some time prior to the termination of the electric business. On this occasion he went over the building with Winslow and pointed out to him certain of the items later listed in the bill of sale, admonishing him that these had become the property of the landlords. He testified that Winslow acceded to these statements on his part and pointed out as an additional item of what belonged to the building a hot water heater which had been installed in the demonstration room for use in connection with a demonstration clothes washer.
It may be pointed out that these statements by Winslow were merely expressions of opinion, were not based on a valuable consideration, and were subject to change by advice of counsel or otherwise.
On this state of facts I am in entire accord with the conclusion of the Special Referee that plaintiffs are not entitled *99 to the relief sought in the second cause of action. Adverting again to the question whether such a conclusion is contrary to the law of the case, it seems to me that there has been a failure of proof of the allegations of the complaint in these particulars.
In my judgment, the allegation, contained in both causes of action, that the defendants disavowed plaintiff's title to the real estate has not been proved. The allegation that all of the property described in the bill of sale was that of plaintiff's has, at best, been proved only in part. The charge of active fraud which is implicit in the allegations of the second cause of action is unsustained by the evidence. If there has been any fraud, either legal or moral, which I do not accede, it has been against the Orangeburg Garment Company and not against plaintiffs.
The allegation of the second cause of action that, after disavowing plaintiffs' title to the real estate, the defendants further breached the terms of the lease by failing to pay rent falling due April 1, 1949, has not been proved. The testimony shows that this payment was tendered in full conformity with the construction placed upon the ambiguous provisions of the lease by the parties themselves through their long course of dealing. In fact, this allegation of the complaint has gone completely out of the picture because of plaintiffs' failure to except to the Special Referee's failure to give any weight to it.
In these and perhaps other particulars the facts before Judge Mann on the demurrer were different from those before the Special Referee on the evidence. Furthermore, even conceding that I may be mistaken in this view, it is in the interest of all of the parties that the merits be passed on in this order. This should preclude the necessity for more than one appeal, no matter what view the Supreme Court should take of the propriety of the decision on the demurrer or of my disposition of the case on the merits. On the other hand, should I find for the plaintiffs on the ground that Judge *100 Mann's order is controlling of the issues before me, the possible necessity of an eventual second appeal is readily foreseeable.
Coming now to the merits, the supplemental or additional exceptions included in the notice dated January 12, 1950, and making the point that the report is contrary to the law of the case as is fixed by Judge Mann's order are overruled for the reasons already stated.
Stripped of non-essentials, we find that plaintiffs bottom their claim to the relief sought squarely upon the proposition that the execution of the bill of sale, dated March 2, 1949, was such a disavowal of the relation of landlord and tenant as gave them the right to declare the lease forfeited. Since I am convinced that this is a non-sequitur, even if it be conceded that this instrument purports to convey the entire fee in the property described therein, I see no good to be accomplished by considering the other exceptions seriatim.
Nor do I think that it would be profitable to go into the intricacies of the law of fixtures. It is obvious from a mere reading of the description in the bill of sale that some of the items were merely chattels in which plaintiffs had no interest. It is equally clear that some of the improvements were of such a nature as to become a part of the real estate and the property of plaintiffs, subject only to defendants' right to make alterations under the terms of the lease. Other items are of such nature as to be subject to bona fide dispute as to the right of the defendants to remove them upon the expiration of the term. Under the testimony everything covered by the bill of sale had been placed in the building by the defendants.
The bill of sale was executed contemporaneously with the execution of a sub-lease of a part of the premises to the grantee for the remainder of the term, which will not expire until December 1, 1954. It is entirely understandable why a bill of sale should have been *101 executed to cover the items of personal property. There is no need to speculate as to why such things as floors, ceiling and partition walls were listed. As to them, the bill of sale conferred no greater rights on the grantee than it acquired under the sublease. It is possible, however, that the parties believed they had the right to tear out walls, ceilings, etc., if profitable, so long as they returned the premises to the plaintiffs at the expiration of the term "in the same condition of repair as leased, natural wear and tear excepted". The warranty clause is also difficult to understand, since it seems to me to be an entirely inaccurate description of the interest of the grantor in some of the items described in the bill. Nevertheless, and with the utmost respect for the ability and earnestness of counsel, the execution of this bill of sale surely cannot be held to be an unequivocal act evidencing a disclaimer by the defendants of the character of their possession of the leased premises.
I do not understand it to be seriously contended that there was any actual intention on the part of the defendants to throw off the lease and claim title in themselves. The gravamen of plaintiff's contention on the merits is thus stated in their brief filed with me: "The law supporting the plaintiff's position in that where the tenant repudiates the relationship, disclaims title in the landlord, or sets up an adverse title in himself or another, this works a forfeiture of the lease and the landlord may sue at once. 52 C. J.S., Landlord and Tenant, § 731, page 593; 32 Am. Jur., page 728; Trustees of Wadsworthville Poor School v. Jennings, 40 S.C. 168, 18 S.E. 257; Few v. Keller, 63 S.C. 154, 41 S.E. 85."
The two South Carolina cases cited in support of this unquestionably correct proposition of the law both involve cases in which the lessee of real estate, or those claiming under the lessee, undertook to convey the real estate in fee and place the grantee in possession as a purchaser. The question in both cases was whether the time presuming a *102 grant (the particular property having been exempted from the operation of the Statute of Limitations) should be counted from the expiration date of the lease or whether it should be counted from the time the grantee took possession under his deed, or, at least, from the time of the lessor's notice of the deed. Our Court held that the execution of the deed was a repudiation of the landlord's title, which it clearly was, and gave the landlord an immediate right of action against the purchaser in possession.
These two cases are but illustrations of the well-understood rule of the common law, which is thus stated in Corpus Juris Secundum and American Jurisprudence, cited by plaintiffs.
52 C.J.S., Landlord and Tenant, § 731, page 593. "Disclaimer of Title. Where the tenant repudiates the relationship and sets up an adverse title in himself or another, the landlord may maintain an action at once for the recovery of possession of the property."
32 Am. Jur., page 728, Section 861. "Disclaimer of Landlord's Title.  It is the general rule, established from an early date, that the tenant's disclaimer of his landlord's title by claiming to hold for himself or another, or by purchase from, or attornment to, another, works a forfeiture of his term, and the landlord, at his election, may treat him as a trespasser, and eject him without a notice to quit. At common law, a conveyance in fee of the premises by tenant for a term of years is such a disclaimer of the lessor's title and fraud upon him as will entitle the lessor immediately to recover the possession."
Nothing less than some unequivocal act on the part of the tenant amounting to an actual disclaimer of the landlord's title can call this principle of law into play. Surely it would be an anomaly to apply it to this case when it is so abundantly clear that there was not the slightest intention on the part of the lessees to throw off the landlord's title and claim the leased premises in fee. The bill *103 of sale itself recites that the improvements conveyed were in "the premises on South Broughton Street now occupied by Palmetto Electric Company under a lease from Thomas R. Wolfe, Albert B. Wolfe and Carlton E. Wolfe to Fred W. Herlihy and Edward Winslow." The sublease, executed contemporaneously with the bill of sale, expires December 1, 1954, the expiration date of the original lease. No provisions of the sublease are inconsistent with the main lease, and the terms of the two as to the rights, duties and privileges of the parties with respect to alterations and repairs by the tenant, the contingency of fire and the restoration of the premises at the expiration of the term are identical. In fact, there is no room for doubt but that the last two paragraphs of the sublease were copied verbatim from the main lease. And, finally, the defendants continued to pay rent as before. Nothing in the authorities relied on by plaintiffs requires the Court to blindfold itself to the true facts and raise the legal fiction that by the execution of the bill of sale the defendants disclaimed the relationship of landlord and tenant and asserted title in themselves to the premises.
A great deal of stress has been laid in argument on the contention that, as to the property listed in the bill of sale, the Statute of Limitations began to run against the landlord's title from the date they had notice of its execution. I think that any apprehension on plaintiff's part in this regard is unfounded. Beyond peradventure, the present occupant, Orangeburg Garment Company, possesses the building in question as a sublessee under the original lease. So long as that relation endures, it is impossible for its use of any "integral part of the said building" to be adverse to the rights of the landlord. The Statute of Limitations cannot begin to run against the landlord's title to the building, or any part thereof, until there is an adverse user.
While I am anxious to bring to a close this already too long decree, some reference to the equities involved is in order.
*104 In 1944 the defendants Herlihy and Winslow obligated themselves, come good or bad to pay rent for this property for the full term of ten years, and the plaintiffs agreed that they should have the possession for that period. Relying upon the right to possession for the agreed term, the lessees expended what must have been considerable sums of money in improving the property. As a result, they are now receiving in rent the sum of one hundred sixty-five ($165) dollars per month, while they obligated to pay only seventy-five ($75) dollars per month to plaintiffs. It matters not whether this differential is profit to them or whether it is absorbed by their expenditures on the property. It is legitimate income. They are entitled to it under the lease.
Their right to this income is assailed only on the ground that they executed the bill of sale. Conceding the impropriety of their having done so, this Court does not sit for the purpose of either punishing the wrongs of the defendants or of rewarding the plaintiffs. The landlords were deprived of nothing by the execution of the bill of sale. It passed title only to that which belonged to the defendants. If the plaintiffs have or shall suffer damage by reason of the defendants' conduct, their remedy at law is adequate.
Indeed, the plaintiffs are so little concerned about damage to their property in the hands of the subtenant and grantee that they failed to even make the Garment Company a party to this action.
Without in anywise intending to discredit anyone's motives, for plaintiffs have every right to invoke any legal remedy which they conceive to be available to them, their declared purpose is to invoke a forfeiture and regain possession of the improved property before the expiration of the term. This, a Court of Equity will not assist them in doing. 30 C.J.S., Equity, § 57, page 398; 32 Am. Jur., page 738; Ross Tin Mine v. Cherokee Tin Minning Co., 103 S.C. 243, 88 S.E. 8.
*105 I think that in recommending that the complaint be dismissed the report goes too far, because the order of reference reserved the cause of action for damages for trial by a jury. In this respect the report must be modified.
It is, therefore, ordered that the second cause of action set forth in the complaint in this action be, and the same is hereby, dismissed and ended.
October 27, 1950.
PER CURIAM.
This Court is in accord with the result of the order of Honorable J.M. Brailsford, Jr., Circuit Judge (which relates solely to the second cause of action). and directs that it be published herewith. But in publishing same, let the word "celotax" in folio 346 be correctly spelled "celotex"; the word "advertising" folio 350, changed to "adverting"; and the word "savowed," second line, third paragraph on page 88, folio 351, changed to "disavowed." It is obvious that all of these errors occurred in copying the order, or in printing same. Also, in publishing the order, omit the third sentence in the third paragraph on page 88, folio 351, beginning with the words, "The allegation." and ending with the word "proved." Substitute for the fourth sentence in the same paragraph the following: The charge of active fraud which is implicit in the allegations of the second cause of action is unsustained by the evidence.
The respondents frankly state in their printed brief that their exception to the order of Honorable M.M. Mann appointing a receiver, or in lieu thereof the filing of a bond, "is immaterial at this time." Therefore we are not passing thereon.
All exceptions to the order of Judge Brailsford are overruled.