## 18876

Paul HARDIN, Jr., Lloyd D. Bolt, J. Henry Walker, on behalf of themselves and all members of the Methodist Church and members of the Prospect Methodist Church and the Methodist Church, Respondents, v. Charles HORGER, Clifton Carter, individually and as representatives of a class too numerous to serve individually, being seceding members of Prospect Methodist Church, and Eddie Lee Carter, Fred Smoak, J. L. Jackson, members of the Board of Trustees of the Prospect Methodist Church, Appellants.

(166 S. E. (2d) 215)

*Messrs. F. Hall Yarborough and Edward Mirmow, Jr.,* of Orangeburg, *for Appellants,*

*Messrs. Travis T. Medlock, and Kermit S. King,* of Columbia, *for Respondents,*

February 20, 1969.

Per Curiam.

At issue in this action is the right to the use and possession of the real property of Prospect Methodist Church located in Jamison, Orangeburg County. The transcript of record does not contain all of the evidence, but we will state the facts as accurately as we are able to from the agreed statement of the case and the portions of the testimony included in the transcript.

At some time in the year 1962, all, or virtually all, of the members of Prospect Methodist Church became dissatisfied as a result of certain inmoral and illegal conduct of the preacher appointed by the bishop at the Annual Conference, as a result of which a group of seven or eight men went to the then District Superintendent with accusations of immoral conduct. Such visit to the Superintendent occurred near the "end of the year", whether conference year or calendar does not appear. The complainants were assured that the offending preacher would not be returned to Prospect Methodist Church following the next Annual Conference, and complainants were apparently satisfied with and placated by such assurance. The record does not reflect whether or not any other action was then taken.

Following the 1963 Annual Conference, the same preacher was returned to Prospect Methodist Church and a new District Superintendent, Dr. Lloyd D. Bolt, was assigned to the district. Complaint against the preacher and his return was registered with Dr. Bolt, the new superintendent, who took the position that the complainants were acting on and reporting rumors as to the conduct of the preacher and that he needed proof rather than rumors. Precisely what action, if any, Dr. Bolt promptly took is not at all clear from the record, but approximately three months after receipt of the complaint by Dr. Bolt, the preacher was arrested by civil authorities and, apparently near the time of his arrest, he was discharged by the Bishop and a new minister, Reverend Walker, assigned to the church. Whether any of the complaints against the offending preacher reached the Bishop prior to the arrest does not appear in the record.

The congregation, either unanimously or very nearly so, became incensed over the events related and seceded from The Methodist Church; became affilidated with the Southern Methodist Church, and have since been in possession of and using the church property as a congregation of the Southern Methodist Church.

This action was brought by Bishop Paul Hardin, Jr., District Superintendent Lloyd D. Bolt, and the newly assigned pastor of Prospect Methodist Church, on behalf of themselves, all members of The Methodist Church, and all members of Prospect Methodist Church claiming membership in The Methodist Church, and The Methodist Church. Named as defendants were the Board of Trustees of Prospect Methodist Church and two other members thereof, individually and as representatives of the seceding members of Prospect Methodist Church as a class. The principal relief sought was an injunction restraining the seceding congregation from making any use of the premises, except for attending services and meetings of The Methodist Church, and to restrain the trustees from taking any steps to dispose of

the property, except as provided by the Discipline of The Methodist Church.

Upon answer being filed, the cause was referred to the Honorable C. E. Summers, as special referee, who following a hearing, recommended that the action be dismissed; that The Methodist Church be declared to have no interest in the property, and that a decree be issued declaring the seceding group, or the class represented by it, to be the true beneficiaries and owners of the property free and clear of the trust clause hereinafter mentioned. Upon exception to the report of the special referee, his recommendations were rejected by order of the circuit court, which decreed that the property in question was to be held by the trustees of The Methodist Church and used as directed by the officials of that church. The appeal is from such order of the circuit court.

The church property involved was acquired in 1879 by certain individuals, as trustees of The Methodist Episcopal Church, South, Jamison, South Carolina. The deeds thereto contained the following trust clause:

"In trust that the said premises shall be used, kept, maintained and disposed of as a place of divine worship for the use of the ministry and membership of The Methodist Episcopal Church, South, subject to the Discipline, usage and ministerial appointments of the said Church, as from time to time authorized and declared by the General Conference of the said Church, and the Annual Conference within whose bounds the said premises are situated."

The foregoing trust provision is substantially the same as used by The Methodist Church from 1879 until the present date. Discipline of The Methodist Church, 1879, 1964 edition. That The Methodist Church is the legal successor to The Methodist Episcopal Church, South, was decided in the case of *Turbeville v. Morris*, 203 S. C. 287, 26 S. E. (2d) 821 (1943).

The Methodist Episcopal Church, South, was, and its successor, The Methodist Church, is a connectional organization with a centralized form of government,

the whole church being a general unit and the local churches being parts of the larger body. It does not have a congregational or independent form of government. *Turbeville v. Morris, supra;* Discipline of The Methodist Church, 1879, 1964 edition. Such being the case, the local congregation is the beneficiary of the trust provision hereinabove set forth only so long as it retains membership in The Methodist Church. Under the plain language of the trust provision here involved, the beneficiaries of the trust are the ministry and the membership of The Methodist Church, subject of course, to the other contents of the trust provision.

The principal contention of the appellants is that The Methodist Church has forfeited its right to the possession and beneficial use of the property in that its officials have breached the terms of the trust by failing to immediately take formal action against the accused minister upon complaint being made against him. It is argued that the Discipline of The Methodist Church contemplated such immediate action and that the failure to take such constituted a departure by the church itself from its Discipline.

Assuming, without necessarily deciding, that the appellants' construction of the various provisions of the Discipline is correct and that the two district superintendents, complained to, did not follow up the complaints promptly and in strict accord with the provisions of the Discipline, appellants cite no legal authority for their contention that the rights of The Methodist Church to the control and use of the property were thereby forfeited. We know of none.

Appellants point to no language in the deeds to the property creating any condition or conditions subsequent and it is well settled that forfeitures will be allowed only where the intent is clear and no other reasonable construction is possible. *McManaway v. Clapp,* 150 S. C. 249, 148 S. E. 18 (1929); *Furman University v. Glover,* 226 S. C. 1, 83 S. E. (2d) 559 (1954). Moreover, if there

were a condition or conditions subsequent in the deeds and a factual situation compelling forfeiture, no one but the grantors or their heirs could take advantage of the breach. *Rhodes v. Black,* 170 S. C. 193, 170 S. E. 158 (1933), and cases therein cited. The appellants simply have no legal standing to complain. While some members of the seceding congregation are apparently heirs of one or more of the original grantors, they assert no right in such capacity. The appear here simply as the representatives of a seceding congregation which is no longer a part of The Methodist Church.

Appellants, at the hearing before the special referee, attempted to prove specific facts as to the acts of misconduct of the preacher, which facts, as opposed to rumors, they allegedly reported to the two superintendents. The special referee ruled such testimony to be irrelevant to the issues involved and refused to allow the proffered testimony to be taken, recorded and reported. Upon hearing of the exceptions to the report of the special referee, the circuit judge refused to remand the cause for the purpose of having the referee take such testimony, and it is now urged that he erred in such refusal.

It is contended that such testimony should have been taken and reported so that the circuit court and this court might be in position to pass upon the degree of abandonment of the Discipline by the authorities of The Methodist Church.

Under the provisions of Sec. 10-1409 of the 1962 Code, the referee was in error in refusing to take and report the proffered testimony. *Elrod v. Elrod,* 230 S. C. 109, 94 S. E. (2d) 237 (1956). Such error, however, was, in our view, harmless and nonprejudicial in the instant case and we, therefore, see no error on the part of the circuit judge in refusing to remand the cause. It was conceded that the offending preacher was guilty of serious immoral and illegal conduct. In view of our disposition of the main issue in the case, the precise nature or details of his misconduct become imma-

terial, since for the reasons hereinabove set forth, the failure of the superintendents to more promptly bring about the removal or dismissal of the offending preacher would not work a forfeiture on the part of The Methodist Church, with respect to the property inuring to the benefit of the appellants.

Lastly, it is urged by appellants that upon the unanimous withdrawal of the membership of Prospect Church there is in existence no congregation affiliated with The Methodist Church and, hence, no one to carry out the main purpose of the trust, which is use of the property as "a place of divine worship". It is contended that the principal purpose of the trust has, accordingly, failed and that the property should be disposed of by a court of equity in a manner which would accord with the main purpose of the trust. It is then argued that there is nothing that could more nearly approximate the original intention of the grantors than the use of the property by the seceding congregation.

These last contentions are not properly before us for decision. The record does not disclose that such were raised below or passed upon by the lower court. The record before us does not contain any factual showing to the effect that there is in the community no present or potential congregation of members adhering to The Methodist Church. Finally, these last mentioned contentions are not raised by any of the exceptions.

We are not without sympathy for the plight of the appellants. The record discloses that the property in question is the fruit of the efforts and contributions of the appellants and the forebears of some of them. The record also suggests that the grievance against the offending preacher could well have been handled more efficiently or expeditiously by the officials of The Methodist Church receiving the complaints. The appeal, however, discloses no basis, which is factually and legally sufficient, for holding that the appellants are entitled to the use and possession of the property as against

The Methodist Church, its officials, ministry and membership. The judgment of the lower court is, accordingly,

Affirmed.