0801

LITCHFIELD COMPANY OF SOUTH CAROLINA, INC. (formerly Fairlane/Litchfield, Inc.), Respondent v. Alex KIRIAKIDES, Jr. and John Kiriakides, Appellants.

(349 S. E. (2d) 344)

Court of Appeals

*Douglas F. Patrick* and *Kathryn Williams*, of *Foster, Covington & Patrick*, Greenville, *for appellants.*

*Jesse C. Belcher, Jr.,* of *Haynsworth Law Firm*, Greenville, *for respondent.*

Heard May 26, 1986.

Decided Sept. 22, 1986.

CURETON, Judge:

This appeal involves a dispute between lessors Alex Kiriakides, Jr. and John Kiriakides, and their lessee, the Litchfield Company of South Carolina, Inc. (Litchfield), over lease provisions as to tax liability and termination on default. We affirm.

Litchfield, which had withheld two monthly rent payments as an offset against an alleged overpayment of prop-

erty taxes, commenced this action to enjoin interference by Messrs. Kiriakides with the use and enjoyment of the leased premises. Litchfield further sought a declaratory judgment as to liability for taxes on the Parking Area adjacent to the leased premises, as well as damages in the amount of taxes already paid by Litchfield or, in the alternative, a declaration that the amount constituted prepayment of rent. Messrs. Kiriakides counterclaimed for a declaration as to the tax liability, and for ejectment of Litchfield from the leased premises. On cross-motions for summary judgment, the trial judge ruled that Litchfield was not responsible for taxes on the Parking Area, and that any breach of the lease was insubstantial and did not warrant termination. Messrs. Kiriakides appeal.

Two issues are before this court: (1) whether Litchfield is responsible for property taxes on the Parking Area, and (2) whether Messrs. Kiriakides are entitled to terminate the lease.

I.

Litchfield leased a parcel described in the lease as "an unnumbered theater lot," upon which it constructed at its own expense a movie theatre valued at approximately $1,500,000.

Paragraph 4 of the lease, entitled "Use of Additional Area," requires Messrs. Kiriakides to "make available" to Litchfield a "Parking Area" without further charge for the term of the lease. Tenants of neighboring parcels also have certain rights to the Parking Area, although Litchfield has sole responsibility for its paving, repair and maintenance. Litchfield has paved the Parking Area.

Paragraph 8, a net lease provision, states that Litchfield shall bear all obligations and expenses "with relation to the leased premises, the improvements thereon and appurtenances thereto."

Paragraph 9 provides that Litchfield shall pay all taxes "imposed upon the leased premises and improvements thereon, or any part thereof" during the term of the lease. The taxes are to be paid as additional rent.

The threshold question here is whether the Parking Area can be construed as part of the "leased premises." We hold

that it cannot. As we construe the lease, Litchfield pays rent for the theatre lot only; access to the Parking Area is explicitly provided to Litchfield at no further charge. The fact that Litchfield has made improvements and is responsible for maintenance does not in itself convert the Parking Area into leased premises.

We reject the argument of Messrs. Kiriakides that Litchfield is liable for taxes because the Parking Area is an appurtenance to the leased premises. While Litchfield is to bear obligations and expenses generally of appurtenances under Paragraph 8, payment of taxes is governed expressly by Paragraph 9, which clearly does not embrace appurtenances.

> The purpose of all rules of contract construction is to ascertain the intention of the parties as gathered from the contents of the entire document and not from any particular provision thereof. *Florence City-County Airport Commission v. Air Terminal Parking Co.,* 283 S. C. 337, 322 S. E. (2d) 471 (Ct. App. 1984). Without deciding whether the Parking Area is appurtenant to the leased premises, we affirm the trial judge's ruling that Litchfield has no obligation under Paragraph 9 of the lease to pay taxes on the Parking Area, and remand for a determination of damages.

## II.

We turn now to the principal question of whether Messrs. Kiriakides are entitled to terminate the lease on the basis of default by Litchfield.

Messrs. Kiriakides argue that the trial judge erred in denying their motion for summary judgment because Litchfield breached the lease agreement. We disagree.

Paragraph 3 of the lease requires that rent be paid without deduction or set-off on or before the first of each month. Paragraph 16 gives Litchfield the right to cure its default within ten days after written notice of failure to pay. The same paragraph provides that upon expiration of the ten-day grace period, and "while such default or defaults shall continue," Messrs. Kiriakides have the right to elect to terminate the lease and repossess the premises and all improvements provided they "give the lessee notice of the lessor's intention to terminate this lease. . . ."

Litchfield's failure to pay rent stems from the parties' ongoing property tax dispute. On June 6, 1983, Messrs. Kiriakides gave written notice that Litchfield had failed to make its monthly rental payment, due June 1. Litchfield replied that the rental amount had been applied to Messrs. Kiriakides' debt for taxes paid on the Parking Area, as well as other land owned by Messrs. Kiriakides and not covered by the lease. On June 16, 1983, Messrs. Kiriakides made a partial reimbursement for the overpaid taxes, but maintained that Litchfield was obligated for taxes on the Parking . Area. Litchfield continued to demand full reimbursement.

Messrs. Kiriakides notified Litchfield in writing that the July rent had not been received. Litchfield refused to pay a second time, but reversed its position on July 12, 1983, when it tendered a check for $8,833.34 in full payment of the rent due in June and July 1983. Messrs. Kiriakides refused the tender by letter postmarked July 13, 1983. The record reflects that a letter from Messrs. Kiriakides' attorney dated July 8, 1983 with no postmark (but with a postal meter stamp of July 12, 1983), purportedly enclosing a notice of termination, was received by Litchfield on July 14, 1983. That same day Litchfield wrote Messrs. Kiriakides advising them that the letter it had received did not contain the notice. Again, Litchfield sought to tender the rent for June and July. On July 18, 1983, Messrs. Kiriakides' attorney forwarded by mail the notice of termination to Litchfield.[1]

Litchfield petitioned in equity for an injunction against eviction on grounds that eviction would work a forfeiture of all their rights under the lease. The trial judge agreed and ruled that the amount of money in controversy is of relatively little importance when viewed in the context of an investment in improvements worth more than $1,500,000 and a lease that does not expire for more than thirty years.

To hold that Litchfield breached the lease and that Messrs. Kiriakides are entitled to possession of the leased premises would work a forfeiture of more than $1,500,000 in improvements made to the property by Litchfield. Forfeitures are not favored in law or equity. *South*

---

[1] The lease provides that all notices required thereunder must be in writing and "shall be deemed to have been properly given when deposited in the United States Mail (as determined by postmark) in certified or registered form. . . ."

*Carolina Tax Commission v. Metropolitan Life Insurance Co.*, 266 S. C. 34, 221 S. E. (2d) 522 (1975). Moreover, forfeitures will be allowed only when intent is clear and no other reasonable construction is possible. *Hardin v. Horger*, 252 S. C. 298, 166 S. E. (2d) 215 (1969). Courts will seize upon even slight evidence to prevent a forfeiture. *Clardy v. Sovereign Camp, W.O.W.*, 193 S. C. 444, 8 S. E. (2d) 748 (1940).

Because the lease set forth the acts which would result in default, and the mode of terminating the tenancy, the parties' rights are to be determined by a fair construction of the contract, not by statutory ejectment principles. *Biber v. Dillingham*, 111 S. C. 502, 98 S. E. 798 (1919).

The issue as we see it is whether Messrs. Kiriakides are entitled to refuse Litchfield's tender of the past due rents and terminate the lease. If Litchfield's tender in full of the June and July rents preceded Messrs. Kiriakides' mailing of notice of termination of the lease, then Messrs. Kiriakides would be precluded from terminating the lease. *Mayron's Bake Shops, Inc. v. Arrow Stores, Inc.*, 149 Conn. 149, 176 A. (2d) 574 (1961); *see Village Development Co. v. Hubbard*, 214 N. W. (2d) 178, 182 (Iowa 1974). *See also* 49 Am. Jur. (2d) *Landlord and Tenant* Section 1030 (1970); 51C C. J. S. *Landlord and Tenant* Section 110b (1968). *Cf. Allendale Furniture Co. v. Carolina Commercial Bank*, 284 S. C. 76, 325 S. E. (2d) 530 (1985) (where a mortgage instrument provided that after default the mortgagee could accelerate the balance due *without notice*, the Supreme Court held that no notice of acceleration was required to precede the rejection of the untimely tender of arrears payments).

It is clear that Litchfield did not tender the June and July payments when due. Nevertheless, according to the terms of the lease, nonpayment of the rent did not, in itself, terminate the lease; rather, it merely gave Messrs. Kiriakides the option to terminate by notice, and repossess the leased premises and improvements. *See,* 49 Am. Jur. (2d) *Landlord and Tenant* Section 1034 (1970).

We recognize that arguably, the July 8 letter from Messrs. Kiriakides satisfied the notice requirements of the lease.[2] We cannot determine from the record,

---

[2] *But see, Turner Communications Corp. v. Hickcox*, 161 Ga. App. 79, 289 S. E. (2d) 260 (1982) and *Woodall v. Pharr*, 119 Ga. App. 692, 168 S. E. (2d)

however, when this letter was mailed.[3] Messrs. Kiriakides had the burden, as appellants, of furnishing this court an adequate record to permit review of this point. *Hamilton v. Greyhound Lines East*, 281 S. C. 442, 316 S. E. (2d) 368 (1984). Messrs. Kiriakides, who sought court determination that the lease had been breached, also had the burden of showing that they had complied with the terms of the lease regarding notice. *Biber v. Dillingham*, 111 S. C. at 505, 98 S. E. at 799. Forfeiture provisions of a lease are strictly construed and when a forfeiture depends upon giving a written notice of default, it must appear that the notice was given in strict compliance with the contract both as to time and content. *Smith v. Hendrix*, 162 Ga. App. 299, 290 S. E. (2d) 504 (1982); *Woodall v. Pharr*, 119 Ga. App. 692, 168 S. E. (2d) 645 (1969), *aff'd* 226 Ga. 1, 172 S. E. (2d) 404; 49 Am. Jur. (2d) *Landlord and Tenant* Section 1021 (1970); *see also, Pearson v. Easterling*, 111 S. C. 124, 97 S. E. 238 (1918), *reh'g dismissed*, 111 S. C. 560, 103 S. E. 771 (1918). Equity will not ordinarily assist a landlord to invoke forfeiture of a lease and regain possession of improved property before expiration of the lease term. *Wolfe v. Herlihy*, 218 S. C. 90, 61 S. E. (2d) 764 (1950).

Because Messrs. Kiriakides have not shown that the mailing of the notice of termination preceded the tender of the June and July rents, we hold that they were precluded from terminating the lease.

We also note that the trial judge found that "while the tenant has breached some of the lease provisions, none were so substantial or fundamental as to constitute a material breach justifying the forfeiture urged by the Defendant." Although Messrs. Kiriakides argue in their brief that the theory of materiality of the breach was not applicable to the facts of this case, none of their exceptions challenge the trial judge's findings regarding materiality. An issue not raised by proper exception will not be considered by this court on

---

645 (1969), *aff'd* 226 Ga. 1, 172 S. E. (2d) 404 (1970), for the proposition that a demand for immediate possession of premises is not sufficient notice of termination of the lease. Nowhere in the July 8 letter is there the language that Messrs. Kiriakides had terminated the lease.

[3] The lease provided that the postmark would be determinative of the time of mailing.

appeal. Rule 4, Section 6, Rules of the Supreme Court of South Carolina.

■ Moreover, as a rule, even in the absence of elements of fraud, accident or mistake, equity will relieve against a forfeiture of a lease incurred by the breach of a covenant to pay rent. *Sheets v. Selden*, 74 U. S. 416, 7 Wall. 416, 19 L. Ed. 166 (1869); 49 Am. Jur. (2d) *Landlord and Tenant* Section 1079 (1970).

■ Finally, we think it would be inequitable under the facts of this case to permit forfeiture of title to the improvements to Messrs. Kiriakides. In the case of *Anderson v. Marion*, 274 S. C. 40, 260 S. E. (2d) 715 (1979), debtors promised to repay a loan by June 1, 1977 or forfeit their stock interest in a jointly owned corporation to their lenders. The debtors attempted to make the June 1 payment on June 2, which was refused by the lenders. The Supreme Court held that the late payment was excused stating "in equity the harsh remedy of forfeiture will be forced to yield to compensation when fair dealing and good conscience seem to require it."

Accordingly, the order of the trial court is affirmed. Of course, Litchfield is required to pay all past due installments of rent as tendered by their pleadings.

GOOLSBY, J., concurs.

GARDNER, J., dissents.

GARDNER, Judge (dissenting):

I dissent. My brethren confuse the law of the majority of states with the minority view, which South Carolina follows.

A careful study of encyclopedic authority reveals that the vast majority of states view a provision of a lease allowing forfeiture of the lease for nonpayment of rent as one intended to provide only security for the payment of the rent. This is not the case in South Carolina. Sections 27-35-140 and 27-37-10, Code of Laws of South Carolina (1976), are the bases of our present case law. Section 27-35-140 provides that failure to pay the rent agreed upon when due shall terminate all tenancies for years (leases) and that the tenant shall forthwith vacate the premises without notice. Section 27-37-10 provides that an action for eject-

ment shall accrue upon the failure of the tenant to pay the rent.

Based on the above statutes, our Supreme Court in *Wright v. Player*, 233 S. C. 223, 104 S. E. (2d) 289 (1958), held that a landlord is under no obligation to accept past due rent tendered after an ejectment proceeding has been commenced because a right of ejectment accrues upon default in the payment of the rent. This, in fact, is exactly what happened in the case before us; under the subject lease itself, read in the light of the applicable South Carolina statutory law and the applicable facts before us, a situation is presented by which Messrs. Kiriakides have an accrued right of ejectment against Litchfield.

The terms of the subject lease provide that if the tenant fails to pay any installment of rent and if such installment shall not be cured within ten days after written notice of failure to make the payment "then, and in any such event, the lessor shall have the right at *its election, then* or any time thereafter while such default or defaults shall continue after lessee's failure to cure such default or defaults as provided in this paragraph, to give the lessee notice of lessor's intention to terminate the lease...."

A careful reading of the lease reflects that the words "or at any time thereafter while such default or defaults shall continue after lessee's failure to cure such default or defaults as provided in this paragraph" are not meant to cut down or variegate the clear meaning of the word "then" which twice preceded the quoted language. The quoted words simply mean, I would hold, that after the right to terminate vests, the right remains unless the lessors accept, at their election, payment of the past due rent. If this were not so, there would be no purpose in limiting the time to "cure" a default; to hold otherwise would require us to ignore the word "cure" twice used in the lease.

Messrs. Kiriakides gave notice on June 6 and July 1 that the rent due those two months had not been paid. When ten days passed from July 1, the right of action for ejectment accrued and could not be negated by a tender and I would so hold.

And I would also hold that the notice of termination of the lease was sufficient. Mr. Douglas F. Patrick, of counsel for

Messrs. Kiriakides, by letter of July 8, 1983, wrote Litchfield this:

> Please be advised that we have been retained by Alex and John Kiriakides. Enclosed you will find a notice signed by the them [sic] as lessors of a lease agreement dated January 15, 1976 and modified in 1983, in which they make demand for return of the premises because of Litchfield's violation of the lease agreement.
>
> Our clients are attempting to find suitable replacement tenants for this property and wish to put your company on notice that any losses incurred because of a lapse of rental income or a reduction in rental income will be the responsibility of your company because of this wilful breach of the lease agreement.
>
> I will be more than happy to discuss this matter with you in advance of the July 31 deadline, however, failure to vacate on or before this date will result in immediate legal action.

This letter clearly sets forth the demands of Messrs. Kiriakides that Litchfield vacate the premises. In South Carolina, even when the statutory law required a formal notice to vacate,[1] it was held that the notice was not to be strictly construed and would be sufficient if the intention to exercise the option was fairly communicated and if it amounted to a demand to vacate by a fixed time. *See Biber v. Dillingham*, 111 S. C. 502, 98 S. E. 798 (1919). Mr. Patrick's letter clearly sets forth July 31, 1983, as the deadline. I would hold that the notice complied with the lease provisions.

Moreover, I most emphatically disagree with the proposition that in South Carolina equity will as a matter of course relieve against a forfeiture of a lease incurred for the breach

---

[1] Section 8813, Code of Laws of South Carolina (1942) (the same statute cited in *Biber v. Dillingham*, 111 S. C. 502, 98 S. E. 798 (1919), as Section 3509 of the 1912 Code), required notice to vacate before a right of ejectment accrued. In 1946 the General Assembly enacted a comprehensive Landlord and Tenant Act (1946 S. C. Acts 873), now codified in part as Section 27-35-140. This Act obviated the requirement to give demand for possession (the right of notice) by repealing Section 8813 of the 1942 Code. Section 27-35-140 squarely places South Carolina among non-notice States; this is the essence of the error of the majority opinion.

of a covenant to pay rent. This may be the law of other states but is not the law of South Carolina. Section 27-35-140 provides that the failure to pay rent when due terminates the lease and directs that the tenant shall forthwith vacate the premises without notice; thus, the statutory law of this state speaks to the issue of forfeiture and speaks strongly. The general law cited in the majority opinion is inapplicable in South Carolina and I would so hold.

Moreover, the holding of my brethren that the issue of material breach is not raised by exception and argument is, in my opinion, unduly technical and not in keeping with the rules of our court. Exception number three is that the trial court erred in granting summary judgment because the undisputed evidence shows the defendants breached the lease by failing to make the June and July rental payments. The brief of Messrs. Kiriakides then argues the materiality of the breach. *Bartles v. Livingston* 282 S. C. 448, 319 S. E. (2d) 707 (Ct. App. 1984), holds that while the Court of Appeals is generally confined to the issues raised by the exceptions, it is not limited to the reasoning of the parties or the trial court in addressing those issues. The issue of breach is raised by exception; the issue of material breach is argued. Materiality of the breach is clearly before the court. Here again the statutory law speaks to materiality; Section 27-35-140 defines the nonpayment of rent as being so material that it terminates all tenancies for years and provides that upon the nonpayment the tenant shall forthwith vacate the premises *without notice.*

I would reverse by holding that Messrs. Kiriakides are vested with an accrued right of ejectment but subject to defense of whether, under all the circumstances of the case, the enforcement of the lease termination provision would be unconscionable; unconscionability was not considered by the appealed order and should be deferred for the trial of the case.

I would reverse the appealed order.